## BUTLER *v.* PERRY, SHERIFF OF COLUMBIA COUNTY, FLORIDA.

### ERROR TO THE SUPREME COURT OF THE STATE OF FLORIDA.

No. 182.  Submitted January 14, 1916.—Decided February 21, 1916.

The term involuntary servitude, as used in the Thirteenth Amendment, was intended to cover those forms of compulsory labor akin to African slavery which in practical operation would tend to produce like results, and not to interdict enforcement of duties owed by individuals to the State.

The great object of the Thirteenth Amendment was liberty under protection of effective government and not destruction of the latter by depriving it of those essential powers which had always been properly exercised before its adoption.

The Fourteenth Amendment was intended to recognize and protect fundamental objects long recognized under the common law system.

Ancient usage and unanimity of judicial opinion justify the conclusion that, unless restrained by constitutional limitations, a State has inherent power to require every able-bodied man within its jurisdiction to labor for a reasonable period on public roads near his residence without direct compensation.

A reasonable amount of work on public roads near his residence is a part of the duty owed by able-bodied men to the public; and a requirement by a State to that effect does not amount to imposition of involuntary servitude otherwise than as a punishment for crime within the prohibition of the Thirteenth Amendment; nor does the enforcement of such requirement deprive persons of their liberty and property without due process of law in violation of the Fourteenth Amendment.

The statute of Florida requiring every able-bodied man within its jurisdiction to work during each year for six ten hour days on public roads within the county of his residence, and imposing penalties for willful failure so to do, is not unconstitutional as contrary to the Thirteenth Amendment or to the due process provision of the Fourteenth Amendment.

67 Florida, 405, affirmed.

THE facts, which involve the constitutionality under the Thirteenth and Fourteenth Amendments of a statute of Georgia requiring able-bodied men to do a certain amount of work on public roads, are stated in the opinion.

*Mr. Charles C. Howell,* for plaintiff in error.

*Mr. Thomas F. West,* Attorney General of the State of Florida, for defendant in error.

MR. JUSTICE MCREYNOLDS delivered the opinion of the court.

Chapter 6537, Laws of Florida (Acts of 1913, pp. 469, 474, 475), provides:

"SEC. 10. Every able-bodied male person over the age of twenty-one years, and under the age of forty-five years, residing in said county for thirty days or more continuously next prior to the date of making of the list by the Board of County Commissioners, or the date of the summons or notice to work, shall be subject, liable and required to work on the roads and bridges of the several counties for six days of not less than ten hours each in each year when summoned so to do, as herein provided; that such persons so subject to road duty may perform such services by an able-bodied substitute over the age of eighteen years, or in lieu thereof may pay to the road overseer on or before the day he is called upon to render such service the sum of three dollars, and such overseer shall turn into the county treasury of his county any and all moneys so paid to him, the same to be placed to the

credit of the road and bridge fund and subject to the order of the Board of County Commissioners for road and bridge purposes; . . .

"SEC. 12. Any person or persons not exempt as aforesaid who shall fail to work on public roads of the several counties when required to do so, or to provide a substitute as herein provided, and shall neglect or refuse to make payment for the same, as hereinbefore provided, shall be guilty of a misdemeanor and upon conviction shall be fined not more than fifty dollars or imprisoned in the county jail for not longer than thirty days."

Plaintiff in error was convicted in the County Judge's Court, Columbia County, upon a charge of failing to work on a road, and sentenced to jail for thirty days. The Circuit Court granted a writ of *habeas corpus;* he was heard, remanded to the custody of the sheriff, and then released under bond. The Supreme Court of the State affirmed the action of the Circuit Court (67 Florida, 405), and the cause is here upon writ of error.

It is insisted that §§ 10 and 12, *supra*, are invalid because they undertake to impose involuntary servitude not as a punishment for crime, contrary to the Thirteenth Amendment to the Federal Constitution; and also because their enforcement would deprive plaintiff of his liberty and property without due process of law, in violation of the Fourteenth Amendment.

In view of ancient usage and the unanimity of judicial opinion, it must be taken as settled that, unless restrained by some constitutional limitation, a State has inherent power to require every able-bodied man within its jurisdiction to labor for a reasonable time on public roads near his residence without direct compensation. This is a part of the duty which he owes to the public. The law of England is thus declared in Blackstone's Commentaries, Book 1, page 357:

'Every parish is bound of common right to keep the

highroads that go through it in good and sufficient repair; unless by reason of the tenure of lands, or otherwise, this care is consigned to some particular private person. From this burthen no man was exempt by our ancient laws, whatever other immunities he might enjoy: this being part of the *trinoda necessitas*, to which every man's estate was subject; viz., *expeditio contra hostem, arcium constructio, et pontium reparatio*. For, though the reparation of bridges only is expressed, yet that of roads also must be understood; as in the Roman law, With respect to the construction and repairing of ways and bridges no class of men of whatever rank or dignity should be exempted.'

The *trinoda necessitas* was an obligation falling on all freemen or at least on all free householders. Vinogradoff, English Society in the Eleventh Century, p. 82.

From Colonial days to the present time conscripted labor has been much relied on for the construction and maintenance of roads. The system was introduced from England, and, while it has produced no Appian Way, appropriateness to the circumstances existing in rural communities gave it general favor. Elliott on Roads and Streets, §§ 479, 480; Dillon on Municipal Corporations, 5th Edition, § 1407, p. 2459, note; Cooley, Constitutional Limitations, 7th Edition, p. 736; *In re Dassler*, 35 Kansas, 678; *State v. Wheeler*, 141 N. Car. 773, S. Car., 5 L. R. A. (N. S.) 1139, note; *Dennis v. Simon*, 51 Ohio St. 233; *State v. Rayburn*, 2 Okla. Cr. Rep. 413; *Sawyer v. Alton*, 4 Illinois, 127; *State v. Commissioners of Halifax*, 15 No. Car. 345. In 1889 the statutes of twenty-seven States provided for such labor on public roads. Young's Recent Road Legislation.

The Ordinance of 1787 for the government of the Northwest Territory declares: "There shall be neither slavery nor involuntary servitude in the said territory, otherwise than in punishment of crimes, whereof the party shall have been duly convicted."

In 1792 the territorial legislative body passed an act providing: "That every male inhabitant of sixteen years of age and upwards on being duly warned to work on the highways by the supervisor in the township to which such inhabitant may belong shall repair to the place and at the time by the said supervisor appointed with such utensils and tools as may be ordered him wherewith he is to labour and there abide and obey the direction of such supervisor during the day in opening and repairing the highway." (Sec. 5, Chapter IV, Laws passed from July to December, 1792, Laws of the Territory Northwest of the Ohio, 1788–1798.) An act of the General Assembly of the Territory passed in 1799, declared: "That all male persons of the age of twenty-one years, and not exceeding fifty, who have resided thirty days in any township of any county within this territory, who are not a township charge, shall over and above the rate of assessment hereinafter mentioned, be liable, yearly and every year, to do and perform two days work on the public roads, under the direction of the supervisor within whose limits they shall be respectively residents." (Sec. 10, Chapter 28 of Northwest Territory Acts, 1799.)

By their several constitutions the States within the limits of the Northwest Territory prohibited involuntary servitude substantially in the language of the 1787 Ordinance, and with the possible exception of Wisconsin, all of them early enacted and long enforced laws requiring labor upon public roads.

Utilizing the language of the Ordinance of 1787, the Thirteenth Amendment declares that neither slavery nor involuntary servitude shall exist. This amendment was adopted with reference to conditions existing since the foundation of our Government, and the term involuntary servitude was intended to cover those forms of compulsory labor akin to African slavery which in practical operation would tend to produce like undesirable results.

It introduced no novel doctrine with respect of services always treated as exceptional, and certainly was not intended to interdict enforcement of those duties which individuals owe to the State, such as services in the army, militia, on the jury, etc. The great purpose in view was liberty under the protection of effective government, not the destruction of the latter by depriving it of essential powers. *Slaughter House Cases,* 16 Wall. 36, 69, 71, 72; *Plessy* v. *Ferguson,* 163 U. S. 537, 542; *Robertson* v. *Baldwin,* 165 U. S. 275, 282; *Clyatt* v. *United States,* 197 U. S. 207; *Bailey* v. *Alabama,* 219 U. S. 219.

There is no merit in the claim that a man's labor is property, the taking of which without compensation by the State for building and maintenance of public roads, violates the due process clause of the Fourteenth Amendment. That Amendment was intended to preserve and protect fundamental rights long recognized under the common law system. *Slaughter House Cases, supra; Jacobson* v. *Massachusetts,* 197 U. S. 11; *Giozza* v. *Tiernan,* 148 U. S. 657, 662; *Mugler* v. *Kansas,* 123 U. S. 623, 663; *Barbier* v. *Connolly,* 113 U. S. 27, 31; *Kelly* v. *Pittsburg,* 104 U. S. 78, 80; *Davidson* v. *New Orleans,* 96 U. S. 97. Conceding for some purposes labor must be considered as property, it is evident from what already has been said that to require work on the public roads has never been regarded as a deprivation of either liberty or property.

The circumstances of the present case indicate no failure to observe due process of law in the exercise of the State's undoubted power. Ample notice appears to have been given and disregarded. There was an orderly trial and conviction before a duly constituted tribunal for a plainly defined statutory offense, followed by a sentence not alleged to be unreasonable.

We find no error in the judgment of the court below, and it is

                                   *Affirmed.*