Felipe Juarez **HURTADO** et al.,
Plaintiffs-Appellants,

v.

The **UNITED STATES** of America,
Defendant-Appellee.

No. 71–2034
Summary Calendar.*

United States Court of Appeals,
Fifth Circuit.

Dec. 21, 1971.

Rehearing Denied March 1, 1972.

Albert Armendariz, Sr., El Paso, Tex.,
plaintiffs-appellants.

* [1] Rule 18, 5th Cir.; see Isbell Enterprises, Inc. v. Citizens Casualty Co. of New York et al., 5th Cir. 1970, 431 F.2d 409, Part I.

Seagal V. Wheatley, U. S. Atty., Ralph E. Harris, Asst. U. S. Atty., El Paso, Tex., for defendant-appellee.

Before BELL, AINSWORTH and GODBOLD, Circuit Judges.

GODBOLD, Circuit Judge:

The five appellants are aliens who, as material witnesses in pending federal criminal prosecutions have been incarcerated pursuant to Rule 46(b), F.R.Crim.P.,[1] upon failure to give bail. Some of them were confined at the time suit was filed; others had been recently released. On behalf of themselves and a class of persons similarly situated they filed suit challenging the validity of payment to them, pursuant to 28 U.S.C. § 1821,[2] the statute prescribing compensation to witnesses in federal cases, of only $1 per day while they are incarcerated and not in attendance in court. They sought damages in the form of payment of additional amounts claimed to be due, and declaratory and injunctive relief relating to § 1821.

Appellants urge that, as to a witness incarcerated and not in attendance in court, § 1821 should be construed to require payment to him of $21 per day, and, alternatively that, if that section permits payment to him of only $1 per day, it violates the Due Process and Just Compensation Clauses of the Fifth Amendment to the constitution and creates an involuntary servitude in contravention of the Thirteenth Amendment.

The District Judge declined to request a three-judge court on the ground that no substantial federal question was presented, and granted summary judgment for the government on issues of statutory construction and constitutionality. We affirm.

Appellants have not challenged the constitutionality of Rule 46(b), or the standards for incarceration, or the validity of incarcerating a witness who is unable to give bail. Rather their challenge

---

1. "Rule 46, *Bail*

 \* \* \* \* \*

 "(b) *Bail for Witness.* If it appears by affidavit that the testimony of a person is material in any criminal proceeding and if it is shown that it may become impracticable to secure his presence by subpoena, the court or commissioner may require him to give bail for his appearance as a witness, in an amount fixed by the court or commissioner. If the person fails to give bail the court or commissioner may commit him to the custody of the marshal pending final disposition of the proceeding in which the testimony is needed, may order his release if he has been detained for an unreasonable length of time and may modify at any time the requirement as to bail."

2. "§ 1821. *Per diem and mileage generally; subsistence*
 "A witness attending in any court of the United States, or before a United States commissioner, or before any person authorized to take his deposition pursuant to any rule or order of a court of the United States, shall receive $20 for each day's attendance and for the time necessarily occupied in going to and returning from the same, and 10 cents per mile for going from and returning

to his place of residence. Regardless of the mode of travel employed by the witness, computation of mileage under this section shall be made on the basis of a uniform table of distances adopted by the Attorney General. Witnesses who are not salaried employees of the Government and who are not in custody and who attend at points so far removed from their respective residence as to prohibit return thereto from day to day shall be entitled to an additional allowance of $16 per day for expenses of subsistence including the time necessarily occupied in going to and returning from the place of attendance: *Provided,* That in lieu of the mileage allowance provided for herein, witnesses who are required to travel between the Territories and possessions, or to and from the continental United States, shall be entitled to the actual expenses of travel at the lowest first-class rate available at the time of reservation for passage, by means of transportation employed: *Provided further,* That this section shall not apply to Alaska.
 "When a witness is detained in prison for want of security for his appearance, he shall be entitled, in addition to his subsistence, to a compensation of $1 per day."

is to the scheme of payment provided for those who are confined.

### 1. Statutory Interpretation.

Section 1821 explicitly declares that $20 per day is due only when a witness is "in attendance" or travelling to and from court. Only when "[a] witness [is] attending in any court of the United States . . . shall [he] receive $20 for each day's attendance and for the time necessarily occupied in going to and returning from the same . . . ." It does not seem a slip of the draftsman's pen that the section omits to extend the $20 per day allowance to each day of a detained witness' confinement. In other respects the statute specifically treats incarcerated witnesses apart from nonincarcerated witnesses, leading to the inference that the failure explicitly to grant the $20 to the former group during their detention was deliberate. For example, "[w]itnesses . . . who are not in custody and who attend at points so far removed from their respective residence as to prohibit return thereto from day to day shall be entitled to an additional allowance of $16 per day for expenses of subsistence . . . ." "When a witness is detained in prison for want of security for his appearance, he shall be entitled, in addition to his subsistence, to a compensation of $1 per day."

We, therefore, reject the theory that § 1821 requires payment of $21 per day to a detained witness not in attendance in court.

### 2. Constitutional Arguments.

#### a. *Thirteenth Amendment.*

There is no merit to the contention that detention without payment reasonably reflecting the loss of working time creates an involuntary servitude. In Heflin v. Sanford, 142 F.2d 798 (5th Cir. 1944) we rejected a similar argument made by a conscientious objector, who "lays much stress on the fact that he was to be paid little, if anything, for his work":

Whether appellant was to be paid much, or little or nothing, is not the question. It is not uncompensated service, but involuntary servitude which is prohibited by the Thirteenth Amendment.

142 F.2d at 799. In numerous ways the government legitimately impinges upon the liberty of the individual without the impingement alone constituting the kind of involuntary servitude contemplated by the Thirteenth Amendment, for example, requiring a conscientious objector to perform alternative service, Klubnikin v. United States, 227 F.2d 87 (9th Cir.), cert. denied, 350 U.S. 975, 76 S.Ct. 453, 100 L.Ed. 846, reh. denied, 351 U.S. 915, 76 S.Ct. 701, 100 L.Ed. 1449 (1955); Heflin v. Sanford, *supra;* requirements of tax laws, Porth v. Brodrick, 214 F.2d 925 (10th Cir., 1954); control and education of children, Bryant v. Brown, 151 Miss. 398, 118 So. 184 (1928); refusal to work for municipality as condition for receiving aid for family, Commonwealth v. Pouliot, 292 Mass. 229, 198 N.E. 256 (1935); requirement that able-bodied men work on roads, Butler v. Perry, 240 U.S. 328, 36 S.Ct. 258, 60 L.Ed. 672 (1916); administration of veterans' decedents estates by public administrator without payment of fees, Crews v. Lundquist, 361 Ill. 193, 197 N.E. 768 (1935); jury duty, *Id.* (dictum); commitment of a defendant acquitted on plea of insanity, State v. Snell, 46 Wash. 326, 89 P. 931 (1907).

#### b. *Fifth Amendment Due Process.*

It is helpful to an understanding of this issue to reiterate what we pointed out above, that appellants do not claim that material witnesses, even indigent ones, may not constitutionally be imprisoned if they cannot give bail, that rather they claim that the government may incarcerate material witnesses if, and only if, it provides compensation sufficient in amount to reach constitutional standards. The argument might be restated this way: in a balancing of interests the governmental interest in

**954**

assuring the testimony of material witnesses justifies imposing loss of liberty only when the government properly compensates those imprisoned. The argument must be rejected.

A closely similar argument was made and rejected in Commers v. United States, 66 F.Supp. 943 (D.Mont.), aff'd, 159 F.2d 248 (9th Cir.), cert. denied, 331 U.S. 807, 67 S.Ct. 1189, 91 L.Ed. 1828 (1946). A World War II draftee was disabled in combat and sued under the Just Compensation Clause of the Fifth Amendment for the capitalized value of his future income lost because of his injuries. The District Court found that his induction and assignment were constitutionally valid and pointed out that his theory, if accepted, would severely reduce the liberties of citizens—i. e., a conclusion that deprivation of personal liberty is acceptable in some circumstances by reason of the government's willingness to disburse dollars as compensation carries with it the implication that in other circumstances liberty (or other constitutionally guaranteed rights) may be taken so long as paid for in dollars.

Also the wording of the Fifth Amendment is not favorable to appellants' theory. It declares that "life, liberty, or property" shall not be deprived without due process. In the next clause it permits "private property" to be taken "for public use" only if "just compensation" is paid. The juxtaposition of the two clauses is significant. Only private property is compensable. The result is not a lower standard for deprivation of "life" or "liberty" but one more strict—"life" and "liberty" are not alienable if only money is the proffered consideration.

 Appellants urge that at least to some extent Fifth Amendment due process incorporates Fourteenth Amendment equal protection standards, and that

those standards have not been met. Only recently the Supreme Court has said:

While the present case, involving as it does a federal statute, does not directly implicate the Fourteenth Amendment's Equal Protection Clause, a classification which meets the test articulated in *Dandridge* [Dandridge v. Williams, 397 U.S. 471, 487, 90 S.Ct. 1153, 1162, 25 L.Ed.2d 491, 503 (1970)] is perforce consistent with the due process requirement of the Fifth Amendment. Cf. Bolling v. Sharpe, 347 U.S. 497, 499 [74 S.Ct. 693, 98 L.Ed. 884].

Richardson v. Belcher, 404 U.S. 78, 92 S.Ct. 254, 257, 30 L.Ed.2d 231 (1971)[3] The *Dandridge* test is that the federal statute must be "rationally based and free from invidious discrimination." Under § 1821 each incarcerated and nonincarcerated witness when in attendance in court receives $20 "for each day's attendance." The nondetained witness receives a travel allowance for going from and returning to his place of residence. The detained witness receives none and is entitled to none, since necessarily the government must transport him. The jailed witness receives his subsistence in kind, while the witness not in jail, if he is sufficiently far from his residence that he cannot return thereto, is entitled to a subsistence allowance of $16 per day. Comparing the incarcerated witness in attendance with his counterpart, the nonincarcerated witness in attendance (and entitled to subsistence), the former is entitled to $21 per day and subsistence in kind, the latter to $36 per day, but he must pay for his own subsistence. We perceive no lack of rationality or discrimination in this.

 The sole inequality remaining is that between payment made to a witness while attending court and the $1 per day paid to an incarcerated witness when not attending. Appellants' argument seems to be that the $20 per day atten-

3. See also: Steward Mach. Co. v. Davis, 301 U.S. 548, 57 S.Ct. 883, 81 L.Ed. 1279 (1937); Hurd v. Hodge, 334 U.S. 24, 68 S.Ct. 847, 92 L.Ed. 1187 (1947).

dance fee is intended to compensate a witness, incarcerated or not, for the loss of his ability to carry on his normal pursuits, and that an incarcerated witness suffers the same loss of ability to carry on normal pursuits whether attending court or languishing in jail waiting for court to commence, but is compensated only $1. The short answer is that governmental recognition of its interest in having persons appear in court by paying them for that participation in judicial proceedings, does not require that it make payment of the same nature and extent to persons who are held available for participation in judicial proceedings should it prove to be necessary. That the government pays for one stage does not require that it pay in like manner for all stages. Also we doubt that the $1 is related at all to compensation, but rather is a stipend for items of personal comfort and care needed by one in confinement, such as toilet articles, sweets, and reading matter. In addition, appellants' position would deny the federal government the ability to pursue mischiefs with partial solutions. *See,* in the equal protection area, *e. g.,* Railway Express Agency v. New York, 336 U.S. 106, 69 S.Ct. 463, 93 L.Ed. 533 (1949); Williamson v. Lee Optical Co., 348 U.S. 483, 75 S.Ct. 461, 99 L.Ed. 563 (1955)

### c. *Fifth Amendment Just Compensation.*

 The ability to earn a living, appellants say, is "private property" within the meaning of the Just Compensation clause, so that it cannot be taken without payment of compensation. This suggestion was presented and rejected in Commers v. United States, *supra.* We doubt the appropriateness of equating "property" in the Due Process Clause with "private property" in the Just Compensation Clause. To do so would present the Congress with setting the standard of payment for a class of private property, which is a judicial function. *See, e. g.,* Monongahela Nav. Co. v. United States, 148 U.S. 312, 13 S.Ct. 622, 37

L.Ed. 463 (1893). Also, as we have said earlier, the idea that incarceration is to be validated by dollar payments rather than on the basis of other governmental interests is a theory not easily confined within rational limits.

### 3. Three judges or one.

The foregoing leads us to the conclusion that the District Court correctly found that the federal questions were insubstantial, so that there was no necessity of requesting a three judge court. Ex parte Poresky, 290 U.S. 30, 54 S.Ct. 3, 78 L.Ed. 152 (1933). We reject the suggestion that the *Poresky* principle is inapplicable because money damages are here sought under 28 U.S.C. § 1346(a) (2), while in *Poresky* jurisdiction was founded on 28 U.S.C. § 1331. The purposes of avoiding unnecessary assemblage of three judges are equally applicable whatever jurisdictional head the plaintiff invokes.

### 4. Conclusion.

Thus we reach the ultimate result that the District Judge was correct in denying a three-judge court and in granting a summary judgment for the United States.

Affirmed.