*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* DL.

CHARISE COATS,

UNPUBLISHED
December 08, 2025
10:52 AM

Petitioner-Appellee,

v

No. 374095
Washtenaw Probate Court
LC No. 20-000875-MI

DL,

Respondent-Appellant.

Before: KOROBKIN, P.J., and MURRAY and MALDONADO, JJ.

PER CURIAM.

In this civil-commitment action under the Mental Health Code, MCL 330.1001 *et seq*., respondent, DL, appeals by right the trial court's July 22, 2024 order continuing involuntary mental-health treatment following a jury trial. For the reasons set forth in this opinion, we affirm.

## I. BACKGROUND AND FACTS

Respondent is diagnosed with schizophrenia. He has been subject to court-ordered involuntary mental-health treatment since 2020, when he was found incompetent to stand trial for allegedly trespassing and assaulting, resisting, or obstructing a police officer on the Ann Arbor campus of the University of Michigan (U of M). In April 2024, petitioner, a social worker on respondent's care team at Walter P. Reuther (WPR) Hospital, filed the petition at issue here because respondent refused to be transferred from the hospital to a group home and threatened to stop taking his medication in the absence of a court order. Respondent demanded a jury trial on the petition.

At trial, the jury heard testimony from respondent; Dr. Drew Trentacosta, respondent's psychiatrist at WPR Hospital who had treated him since June 2023; and Dr. Daniel Blake, a licensed psychologist of 38 years who had reviewed respondent's medical records and testified as an expert. Both Dr. Trentacosta and Dr. Blake testified that respondent would not participate in

mental-health treatment or properly attend to his own basic needs on his own without intervention. Specifically, Dr. Blake opined that he agreed with respondent's diagnosis of schizophrenia, characterizing respondent's mental illness as "severe" because respondent's delusions caused him to be "out of touch with reality in a very significant way." In support, Dr. Blake pointed to respondent's belief that he owned U of M, leading to three encounters with police and security on U of M's campus when he attempted to "take possession of his asset." He also noted respondent's previous refusal to eat and launder his clothes while incarcerated because he thought that the jail personnel were poisoning him. Respondent also claimed that he was molested in jail by the judge that adjudicated him incompetent to stand trial. Similarly, Dr. Trentacosta testified that respondent believed that a judge was poisoning him in jail and that respondent lost 40 pounds because he refused to eat allegedly poisoned food. Despite this behavior, both witnesses noted that respondent did not believe that he had a mental illness and that he refused to take psychiatric medication without a court order. They testified that respondent's judgment was so impaired that he was unable to understand the need for treatment, and that without such treatment he would not be able to take care of himself which would present a danger to himself and others.

Respondent testified that he did not need a continuing mental-health order because he was misdiagnosed and had no history of mental illness. In his testimony, he confirmed that he would not take any medication or attend group therapy without a court order. He further testified that this case arose after officers filed false reports to harass him, reiterating that a federal judge in West Virginia awarded him and his son ownership interests in U of M.

The jury returned a verdict that respondent was a person requiring treatment under MCL 330.1401(1)(c),[1] and the trial court entered a corresponding order continuing respondent's involuntary commitment for mental-health treatment for a period not to exceed one year. Respondent then moved *in propria persona* for a mistrial. The trial court reviewed respondent's motion as a motion for new trial under MCR 2.611 and, in a written opinion, denied his various claims of error. This appeal followed.

## II. ANALYSIS

### A. JURY INSTRUCTIONS

Respondent first contends that the trial court's jury instructions were biased and impermissibly bolstered the credibility of witnesses Dr. Blake and Dr. Trentacosta. We disagree.

---

[1] Under MCL 330.1401(1)(c), a "person requiring treatment" is

> [a]n individual who has mental illness, whose judgment is so impaired by that mental illness, and whose lack of understanding of the need for treatment has caused him or her to demonstrate an unwillingness to voluntarily participate in or adhere to treatment that is necessary, on the basis of competent clinical opinion, to prevent a relapse or harmful deterioration of his or her condition, and presents a substantial risk of significant physical or mental harm to the individual or others.

To preserve a claim of instructional error for appeal, the party must object to the instruction on the record before the jury begins its deliberations. *Landin v Healthsource Saginaw, Inc*, 305 Mich App 519, 545; 854 NW2d 152 (2014). Respondent did not object to the jury instructions at trial; therefore, this issue is not preserved. See *id*. We review an unpreserved claim of instructional error under the plain-error rule. See *id*. at 544-545. "Under this standard, a party must show that an error occurred, that it was clear or obvious, and that it caused prejudice, i.e., that the error affected the outcome of the proceedings." *In re MAT*, ___ Mich App ___, ___; ___ NW3d ___ (2024) (Docket No. 369255); slip op at 3 (quotation marks and citation omitted).

Respondent does not identify which jury instruction was erroneous or impermissibly bolstered the credibility of the witnesses. Our review of the record discloses no jury instruction that urged jurors to prefer the testimony of Dr. Blake or Dr. Trentacosta or in any way suggested that they were worthier of belief than other witnesses or evidence. To the contrary, the trial court instructed the jury that one or more witnesses were offered as experts, but, "as in the case of other witnesses, you are free in your considered judgment to accept all, part, or none of the testimony of an expert witness." The trial court further instructed jurors that they must reach a verdict by considering only the evidence and their verdict must not be influenced by bias for or against any witness. We find no error or bias in the trial court's jury instructions.

Respondent also takes issue with "instructions" given by petitioner's counsel in his closing argument that the jury should find by clear and convincing evidence that respondent was a person who needed continuing involuntary mental-health treatment. But a counsel's statements and arguments are not evidence, *In re Conservatorship of Brody*, 321 Mich App 332, 349; 909 NW2d 849 (2017), and, here, the trial court instructed the jury on that rule multiple times. Jurors are presumed to follow the court's jury instructions, *Lenawee Co v Wagley*, 301 Mich App 134, 159; 836 NW2d 193 (2013), and such instructions "are presumed to cure most errors," *Zaremba Equip, Inc v Harco Nat'l Ins Co*, 302 Mich App 7, 25; 837 NW2d 686 (2013) (quotation marks and citation omitted). Further, respondent has not identified statements by petitioner's counsel that constitute improper argument or that usurp the role of the trial court to instruct the jury. Therefore, the trial court did not err and respondent's argument fails under the plain-error rule.

## B. TRIAL TESTIMONY

Respondent next claims that Dr. Blake and Dr. Trentacosta gave false and unsupported testimony at trial and that the trial court accordingly abused its discretion by denying him a new trial. We disagree.

We review a trial court's decision on a motion for new trial for an abuse of discretion. *Estate of Carlsen v Southwestern Mich Emergency Servs, PC*, 338 Mich App 678, 693; 980 NW2d 785 (2021). An abuse of discretion occurs when a trial court chooses an outcome outside the range of reasonable and principled outcomes. *In re Tchakarova*, 328 Mich App 172, 182; 936 NW2d 863 (2019).

In criminal trials, a prosecutor's use of false testimony to obtain a conviction is inconsistent with due process, *People v Brown*, 506 Mich 440, 446; 958 NW2d 60 (2020), and the government "may not knowingly use false evidence, including false testimony, to obtain a tainted conviction," *id.* (quotation marks and citation omitted). Reversal is necessary if "uncorrected false testimony

could . . . in any reasonable likelihood have affected the judgment of the jury." *Id.* at 447 (quotation marks and citation omitted). We will apply those principles in this civil-commitment case, but we conclude that respondent is not entitled to relief.

One basis for respondent's argument that the witnesses' testimony was false stems from his assertion that his arrest at U of M in 2020 was fraudulent and arranged by a judge whom he previously sued. At trial, Dr. Blake testified that respondent was charged with trespass and assaulting, resisting, and obstructing a police officer in 2020, which is consistent with records from the charging court. Dr. Blake did not testify that respondent committed or was found guilty of those crimes, only that he was so charged. Because respondent has not established that Dr. Blake's testimony was false, he is not entitled to relief on this claim. See *Brown*, 506 Mich at 447.

Respondent further contends that Dr. Blake and Dr. Trentacosta had no proof to support their testimony that he was a person who required treatment under MCL 330.1401(1). However, at trial, the doctors both testified that respondent was diagnosed with schizophrenia, which caused delusions that led to his potentially dangerous behavior. They pointed to respondent's belief that he was awarded an ownership interest in U of M and his attempt to physically recover the university as his asset, which led to criminal charges. Further, they testified that while incarcerated, respondent believed that he would be poisoned, refused to have his clothes laundered, and lost 40 pounds because he refused to eat. Respondent's beliefs—including his ownership of U of M, which he testified to—were unsupported by independently verifiable facts.

At the time of trial, Dr. Blake and Dr. Trentacosta both testified that respondent could be released from WPR Hospital to a group home where he could live with more autonomy while continuing his mental-health treatment through community-health services. But respondent refused to be released to a group home, and he told Dr. Trentacosta that he would not take any mental-health medication without a court order because he did not have a mental illness. Because respondent refused to be released to a place where his mental-health medication could be monitored, Dr. Trentacosta deemed it necessary to petition the court to continue respondent's hospitalization under MCL 330.1100b(7). Given this evidence and contrary to his claims, respondent has not shown that any testimony given by Dr. Blake or Dr. Trentacosta was false or unsupported.

Respondent had a full and fair opportunity to present his defense, and he testified about his history, his mental health, and his assessment of his needs. It was for the jury to weigh the credibility of the witnesses and make findings of fact. See *Hecht v Nat'l Heritage Academies, Inc*, 499 Mich 586, 617; 886 NW2d 135 (2016). When considering a decision on a motion for new trial, this Court may not substitute its judgment for that of the jury unless the record establishes that the evidence "preponderates so heavily against the verdict that it would be a miscarriage of justice to allow the verdict to stand." *Barnes v 21st Century Premier Ins Co*, 334 Mich App 531, 551; 965 NW2d 121 (2020) (quotation marks and citation omitted). The evidence did not preponderate in respondent's favor; accordingly, the trial court did not abuse its discretion by denying his motion for new trial.

## C.  INCOMPLETE MEDICAL RECORD

Respondent next contends that WPR Hospital failed to include his handwritten corrections in his medical record, and that, accordingly, Dr. Blake's testimony in reliance on respondent's purportedly incomplete medical record was flawed.  We disagree that respondent is entitled to relief on this basis.

This issue involves the interpretation of a section of the Mental Health Code, and we review matters of statutory interpretation de novo.  *In re Portus*, 325 Mich App 374, 381; 926 NW2d 33 (2018).  Respondent also raised this issue in his posttrial motion, the denial of which we review for an abuse of discretion.  *Estate of Carlsen*, 338 Mich App at 693.

As an initial matter, respondent is correct that, under the Mental Health Code, WPR Hospital was required to

> maintain a complete record for each patient.  The record shall contain at a minimum a written assessment and individual plan of services for the patient, a statement of the purpose of hospitalization or treatment, a description of any tests and examinations performed, and a description of any observations made and treatments provided.  [MCL 330.1141.]

Moreover, as a recipient of mental-health treatment, under MCL 330.1749, respondent could "challenge the accuracy, completeness, timeliness, or relevance of factual information in the recipient's record."  Respondent had the right to submit his statements correcting information in his medical record and the statute provides that "[t]he statement shall become part of the record." *Id*.  When reviewing a statute, we must interpret it according to its plain and unambiguous language.  *SBC Health Midwest, Inc v Kentwood*, 500 Mich 65, 72; 894 NW2d 535 (2017).  Thus, as respondent argues, the plain language of the statute provides that WPR Hospital was required to include his handwritten statements of errors and corrections as part of his medical record.

However, respondent does not provide any evidence that WPR Hospital failed to maintain a complete medical record for him.  And neither respondent's medical record nor his handwritten statements were admitted at trial, so he cannot show that any record evidence presented to the jury was insufficient or inaccurate.  Instead, respondent argues that Dr. Blake's testimony was not worthy of belief or contained false information because the medical record that he received was incomplete.  For example, respondent argues that Dr. Blake was incorrect when he testified that respondent believed that he owned U of M at the time of trial, as respondent had asserted in a December 2023 statement purportedly correcting his medical record that he did not know the state of ownership of the university.  We note that the December 2023 assertion is contradicted by respondent's own testimony at trial that he was awarded U of M by a West Virginia court order in 2014.  But regardless, Dr. Blake testified that even if respondent's handwritten statements were in the file, he would not have read them because it was not his practice to read every page of a patient's medical file and he only considered documents that he deemed clinically significant.  Put differently, Dr. Blake's own testimony establishes that review of the handwritten statements would not have changed his diagnosis, his opinions, or his testimony.

The trial court did not abuse its discretion by declining to grant respondent relief on his claim that Dr. Blake's testimony was based on an incomplete medical record. As the trial court noted in its order denying respondent's motion, it instructed the jury to consider the information known to each witness and to consider how the accuracy of the witness's testimony may be impacted by his or her exposure to documents and reports. The trial court also explained that respondent had the opportunity to testify about his medical record and to challenge assertions by other witnesses. "It is the province of the jury to determine questions of fact and assess the credibility of witnesses." *People v Lemmon*, 456 Mich 625, 637; 576 NW2d 129 (1998). "[A]bsent exceptional circumstances, issues of witness credibility are for the jury, and the trial court may not substitute its view of the credibility 'for the constitutionally guaranteed jury determination thereof.' " *Id.* at 642 (citation omitted). Respondent's avenue to attack perceived flaws in the witnesses' testimony was through cross-examination and his own contrary testimony, and he did just that. Accordingly, the trial court did not abuse its discretion when it denied respondent's motion for new trial on this ground.

## D. INDEPENDENT CLINICAL EVALUATION

Respondent next maintains that he did not receive the independent clinical evaluation that he requested and that the trial court should have dismissed the petition on this ground. We disagree.

Under the Mental Health Code, a person subject to a petition for involuntary mental-health treatment

> has the right at his or her own expense, or if indigent, at public expense, to secure an independent clinical evaluation by a physician, psychiatrist, or licensed psychologist of his or her choice relevant to whether he or she requires treatment, whether he or she should be hospitalized or receive treatment other than hospitalization, and whether he or she is of legal capacity. [MCL 330.1463(1).]

Thus, respondent did have a right to an independent clinical evaluation. However, upon review of the record, we conclude that he waived that right.

"A waiver is an intentional relinquishment or abandonment of a known right. An affirmative expression of assent constitutes a waiver." *Nexteer Automotive Corp v Mando American Corp*, 314 Mich App 391, 395; 886 NW2d 906 (2016) (citation omitted). "One who waives his rights under a rule may not then seek appellate review of a claimed deprivation of those rights, for his waiver has extinguished any error." *People v Kowalski*, 489 Mich 488, 503; 803 NW2d 200 (2011) (quotation marks and citation omitted). Further, "[a] party may not claim as error on appeal an issue that the party deemed proper in the trial court because doing so would permit the party to harbor error as an appellate parachute." *In re Conservatorship of Brody*, 321 Mich App at 347 (quotation marks and citation omitted; alteration in original).

In the present case, respondent requested an independent clinical evaluation and, at a pretrial hearing in June 2024, his counsel asked for, and received, additional time while awaiting the production of respondent's medical file for the evaluation. At the next pretrial hearing approximately a week later, counsel again asked for and received an adjournment to wait for the

medical record.  At a pretrial hearing at the end of June 2024, counsel explained that he was having trouble finding a doctor to conduct the evaluation.  The trial court set a date for trial at respondent's request that would give him enough time to obtain the independent evaluation.  At the final pretrial conference on July 17, 2022, the trial court asked if respondent intended to proceed to trial, and respondent's counsel said, "That is correct."  On the day of trial, before jury selection, counsel advised the trial court that he intended to call Dr. Trentacosta and respondent as witnesses.  Respondent and his counsel did not request a further adjournment of the trial to obtain the evaluation and instead opted to go to trial without one.  Because respondent, through counsel, affirmatively waived his right to an independent evaluation, he has waived this issue.  See *Nexteer*, 314 Mich App at 395.  Accordingly, respondent is not entitled to relief on this claim.  See *In re Conservatorship of Brody*, 321 Mich App at 347.

### E.  INEFFECTIVE ASSISTANCE OF COUNSEL

We also find no merit to respondent's claim that he was denied the right to the effective assistance of counsel.

To preserve a claim of ineffective assistance of counsel in an involuntary commitment case, a respondent must move for a hearing to create a record related to those claims.  *In re Londowski*, 340 Mich App 495, 516; 986 NW2d 659 (2022).  Respondent did not request an evidentiary hearing in the trial court or move for remand on appeal; therefore, his claim is not preserved for appellate review, and our review is limited to "errors apparent on the record."  See *id*.

"The question whether defense counsel performed ineffectively is a mixed question of law and fact; this Court reviews for clear error the trial court's findings of fact and reviews de novo questions of constitutional law."  *Id*. (quotation marks and citation omitted).  To warrant relief, a "respondent must demonstrate that counsel's performance was 'deficient' under an 'objective standard of reasonableness' and that 'counsel's errors were so serious as to deprive the [respondent] of a fair [hearing] . . . whose result is reliable.' "  *Id*., quoting *Strickland v Washington*, 466 US 668, 687-688; 104 S Ct 2052; 80 L Ed 2d 674 (1984).

Most of respondent's claims regarding this issue relate to counsel's failure to introduce certain evidence or subpoena other witnesses.  But as this Court has explained:

> Decisions regarding whether to call or question a witness are presumed to be matters of trial strategy. . . .  Likewise, decisions regarding what evidence to present, what evidence to highlight during closing argument, whether to call witnesses, and how to question witnesses are presumed to be matters of trial strategy.  This Court will not second-guess counsel on matters of trial strategy, nor will it assess counsel's competence with the benefit of hindsight.  [*People v Putman*, 309 Mich App 240, 248; 870 NW2d 593 (2015) (quotation marks and citations omitted).]

Respondent first argues that his attorney should have sought admission of respondent's written corrections to his medical record as well as various other documents written by him.  Assuming, without deciding, that the documents were admissible, they were not relevant to the

issues to be decided by the jury or were plainly contrary to respondent's defense that he did not suffer from a mental-health condition or delusions. Respondent has not overcome the presumption that counsel's decision not to introduce respondent's writings was the result of sound trial strategy. See *id*.

Next, respondent contends that counsel was ineffective for failing to subpoena four witnesses who would have supported his defense that he did not suffer from any mental-health condition. Respondent never named these witnesses, but he asserts in his reply brief that the witnesses included two psychologists, a recreational therapist, and a residential-care associate. The only evidence that respondent proffered in support of his claim that he requested his counsel to call the witnesses at trial was respondent's handwritten letter to his counsel, which stated that he wanted to review his counsel's list of potential witnesses. The record does not show who respondent wanted counsel to call as witnesses, and he has not demonstrated through affidavits or some other offer of proof that there is an "issue for which further factual development would advance his claim." *People v Chapo*, 283 Mich App 360, 369; 770 NW2d 68 (2009). Respondent's failure to name the witnesses or to provide any information about their qualifications, their relationship to him, or their anticipated testimony, amounts to a failure to establish the need for remand to make a factual record on his ineffective assistance of counsel claim. See *id*.

Third, respondent contends that trial counsel was ineffective for failing to introduce his Montreal Cognitive Assessment scores as evidence of his cognitive abilities. But Dr. Blake testified that he did not consider respondent's cognitive-assessment scores because respondent's cognitive functions were not impaired. According to Dr. Blake, respondent could think and make decisions for himself, but respondent was "an emotionally impaired and mentally impaired person" because of his schizophrenic delusions, and those made "it dangerous for him to be in the community unsupervised." Counsel was not ineffective for failing to introduce respondent's scores because they were not relevant to his mental-health diagnosis, and respondent has not overcome the presumption that his counsel's decision not to introduce the evidence was sound trial strategy. See *Putman*, 309 Mich App at 248.

Fourth, respondent asserts that counsel's decision to waive respondent's right to an independent clinical evaluation deprived him of his statutory right to have one. But the record does not indicate that counsel waived the evaluation without respondent's consent. Given that counsel had difficulty locating a doctor to conduct the evaluation, it was a reasonable strategy for respondent and his counsel to waive the evaluation and proceed with trial, particularly because respondent made clear that he did not want to continue treatment at WPR Hospital where he remained while awaiting trial. The record also reflects that respondent's counsel could have reasonably concluded that an independent evaluation was unlikely to lead to a different diagnosis given respondent's injurious behavior and thoughts at that time. In other words, counsel could have reasonably concluded that another doctor would conclude that respondent was a person in need of mental-health treatment just as Dr. Blake and Dr. Trentacosta did.

Lastly, respondent contends that his counsel was ineffective for failing to adequately examine witnesses or respond to petitioner's closing argument. Again, decisions about questions to ask witnesses and evidence to highlight during closing argument are presumed to be matters of trial strategy. *Id*. The record reflects that respondent's counsel advocated for respondent's

preferred position at trial as required by MCR 5.732(B), and he capably questioned witnesses in defense of that position. Further, in his closing argument, defense counsel discussed respondent's strong belief that he did not suffer from a mental illness and emphasized respondent's ability to make decisions and take care of his needs as well as his nonviolent history at WPR Hospital. Respondent's counsel also elicited testimony from respondent about his own assessment of his mental health and needs as well as his academic and business achievements, the responsibilities he had as a father, and his goal of returning to Pennsylvania.

In sum, respondent's counsel's performance was not deficient under *Strickland*. And because we conclude that his performance was not deficient, respondent cannot establish that he was prejudiced. *In re Londowski*, 340 Mich App at 516, citing *Strickland*, 466 US at 687-688.

## F. CONSTITUTIONAL VIOLATION

Finally, respondent argues that, aside from the determination of his need for involuntary mental-health treatment, the trial court's order includes provisions that violate the Thirteenth Amendment of the United States Constitution, US Const, Am XIII. We disagree.

The Thirteenth Amendment states that "[n]either slavery nor involuntary servitude, except as a punishment for crime whereof the party shall have been duly convicted, shall exist within the United States, or any place subject to their jurisdiction." US Const, Am XIII.

> The primary purpose of the [Thirteenth] Amendment was to abolish the institution of African slavery as it had existed in the United States at the time of the Civil War, but the Amendment was not limited to that purpose; the phrase "involuntary servitude" was intended to extend "to cover those forms of compulsory labor akin to African slavery which in practical operation would tend to produce like undesirable results." [*United States v Kozminski*, 487 US 931, 942; 108 S Ct 2751; 101 L Ed 2d 788 (1988), quoting *Butler v Perry*, 240 US 328, 332; 36 S Ct 258; 60 L Ed 672 (1916).]

The United States Supreme Court has stated that "in every case in which this Court has found a condition of involuntary servitude, the victim had no available choice but to work or be subject to legal sanction." *Kozminski*, 487 US at 943.

Respondent argues that the trial court's order continuing his mental-health treatment forced him to take medication including injections, to participate in certain activities, and to live under supervision, in violation of the Thirteenth Amendment. The trial court's order stated that he would remain hospitalized and, when released, would receive assisted outpatient treatment as defined in MCL 330.1100a(8). But nothing in the trial court's order of continuing mental-health treatment requires compulsory work or servitude that is prohibited by the Thirteenth Amendment. For this

reason, respondent's claim that the trial court's order violates the Thirteenth Amendment lacks merit.[2]

## III. CONCLUSION

For the reasons discussed, respondent was afforded due process at his trial and the evidence supported the jury's verdict that respondent was a person requiring treatment under MCL 330.1401(1)(c). Respondent has not shown that the verdict was constitutionally infirm or that any errors violated his constitutional rights.

Affirmed.

/s/ Daniel S. Korobkin
/s/ Christopher M. Murray
/s/ Allie Greenleaf Maldonado

---

[2] Respondent also asserts that the cumulative effect of various alleged errors denied him a fair trial. It is well-settled that the cumulative effect of errors mandate reversal when "consequential errors . . . result in substantial prejudice that denies the aggrieved party a fair trial." *Lewis v LeGrow*, 258 Mich App 175, 200; 670 NW2d 675 (2003). Because we find that no consequential errors occurred, there is no cumulative effect justifying reversal. *Id*. at 200-201.