Barbara STEIRER and Thomas Steirer, individually and as parents and guardians of Lynn Ann Steirer, a minor, and Thomas Moralis and Barbara Moralis, individually and as parents and guardians of David Stephen Moralis, a minor, Plaintiffs,

v.

The BETHLEHEM AREA SCHOOL DISTRICT, Defendants.

Civ. A. No. 90–6046.

United States District Court, E.D. Pennsylvania.

April 2, 1992.

---

Robert J. Magee and Eric R. Strauss, Worth Law Offices, P.C., Allentown, Pa., for plaintiffs Barbara Steirer, Thomas Steirer, Thomas Moralis, Barbara Moralis, Lynn Ann Steirer and David Stephen Moralis.

Andrew E. Faust, Curtin and Heefner, Doylestown, Pa., Michael I. Levin, Cleckner and Fearen, Willow Grove, Pa., for defendants Bethlehem Area School Dist., Thomas J. Dolusio, Ellen Pagano, Barbara Huth, Joseph McCarthy, John Spirk, Sr., Ruth Prosser, Uriel Trujillo, Lawrence Kisslinger, Lynn Glancy, and Robert Thompson.

## MEMORANDUM & ORDER

HUYETT, District Judge.

This action arises as a result of the adoption by the Bethlehem Area School District of a revised program of high school studies which includes a community service graduation requirement. Plaintiffs, Barbara Steirer and Thomas Steirer, individually and as parents and guardians of Lynn Ann Steirer, and Thomas Moralis and Barbara Moralis, individually and as parents and guardians of David Stephen Moralis, bring this action against defendants Bethlehem Area School District, Thomas J. Dolusio, Ellen Pagano, Barbara Huth, Joseph McCarthy, John Spirk, Sr., Ruth Prosser, Uriel Trujillo, Lawrence Kisslinger, Lynn Glancy and Robert Thompson. Plaintiffs claim that the community service program and graduation requirement adopted by the Bethlehem Area School District violates the First, Thirteenth and Fourteenth Amendment rights of the minor plaintiffs and of all students attending Bethlehem Area schools. Both plaintiffs and defendants have filed motions for summary judgment pursuant to Fed.R.Civ.P. 56. For the reasons stated below, I shall grant defendants' motion for summary judgment and deny plaintiffs' motion for summary judgment.

## I. INTRODUCTION.

On April 30, 1990, the Bethlehem Area School District ("school district"), by a majority vote of its Board of Directors, adopted a program of high school studies which includes a community service graduation requirement. The program requires that every student in the school district provide sixty (60) hours of community service between the start of ninth grade and the completion of twelfth grade.[1] The required community service can be provided through an agency approved by the school district, through an independent program selected by the district or through an independent program selected by the student

---

1. The only students excluded from the community service requirement are those students attending special education classes.

and approved by the appropriate school officials.

The plaintiffs in this action are two sets of parents who reside within the school district and their two children, each of whom attends a public high school operated by the school district. The defendants are the school district, members of the school district's board of directors, and the school district superintendent. The school district is located in Lehigh County and Northampton County and covers approximately forty-two square miles. The school district serves a population of approximately 100,000 and enrollment in all age groups is approximately 12,000. Approximately 3,500 students are enrolled in high schools in the school district.

Under the program adopted by the Bethlehem Area School District, any community service project must meet the course objectives outlined in the curriculum course guide. The four (4) course objectives identified and outlined in the curriculum course guide are as follows: (1) students will understand their responsibilities as citizens dealing with community issues; (2) students will know that their concern about people and events in the community can have positive effects; (3) students will develop pride in assisting others; and (4) students will provide services to the community without receiving pay.

The school district's superintendent, Thomas Dolusio, states that the purposes of the community service program include the following:

a. To help students acquire life skills;

b. To help students learn about the significance of rendering service to their community;

c. To give students a sense of worth;

d. To give students a sense of pride;

e. To teach students about community organizations;

f. To give students a sense of appreciation of the worth of community organizations;

g. To help students understand their responsibilities as citizens in dealing with community issues;

h. To teach students that their concerns about people and events in the community can have positive effects;

i. To improve students' self-esteem;

j. To improve the students' ego and moral development;

k. To give students the opportunity to explore new roles, identities and interests;

l. To enhance the students' willingness to take and accept new challenges;

m. To have students assume responsibility and to accept the consequence of their actions;

n. To develop intellectual development and academic learning in such areas as the expression of ideas, reading and record-keeping;

o. To promote higher-level thinking skills such as open-mindedness;

p. To enhance the skills of learning from experience;

q. To have students learn about and be exposed to service-related skills.

*See* Dolusio Aff. at ¶ 17.

Phyliss Walsh, the community service program director, was directed by the school district to write the curriculum for the program. As originally drafted, the community service program possessed two components. The first component of the draft program contemplated the classroom teaching and training of decision making, problem solving, and stress management skills. The second component of the draft program required the actual service to the community.

The program adopted by the school district only includes the community service component. Certain aspects of the classroom component of the draft program have, however, been incorporated into the community service component, including the integration of small group meetings into the program. The community service program was not designed to ensure and does not require that a correlation exist between a student's community service experience and that student's classroom coursework.

None of the defendants who voted in favor of adopting the community service program and graduation requirement expressed any dissatisfaction with the program's course objectives and none of the defendants proposed any amendments to the stated objectives of the community service program. All of the defendants who voted for the challenged program believe that community service is an admirable and worthwhile endeavor. Further, all of the defendants believe that all people should participate in community service in one manner or another.

The purpose of the community service program is not to require children to provide clerical or maintenance services to the school district. Rather, as stated in the course objectives, the purpose of the program is to expose students to community service and to make students aware of the positive aspects of providing community service. The defendants decided to make the community service program mandatory because they believed that certain students would benefit from the community service program and would not participate absent a mandatory program.

Pursuant to the community service program's requirements, each student must apply to the school for approval of the particular community service project that the student wishes to pursue. The school district uses separate application forms for students to apply for approval of each project and service. Many and varied volunteer activities will satisfy the community service requirement. For example, marching in the school band during the Halloween parade, playing with children at the Jewish Community Center, stuffing envelopes for the Lehigh Presbytery and walking and grooming dogs and cats for the SPCA all qualify as community service under the Bethlehem Area School District program.

The school system monitors each student's community service project through two required meetings between each student and a designated counselor. At these student meetings, the counselor is required to review each student's community service project. The meetings with the counselors can last for as little time as five (5) minutes. The student:counselor meetings represent the only formal involvement of the Bethlehem Area School District in monitoring the progress of the community service program. The two minor plaintiffs, Lynn Ann Steirer and David Stephen Moralis, participated in a community service program meeting with a counselor. Between five and six students attended this meeting which lasted approximately fifteen (15) minutes.

In exchange for providing sixty (60) hours of service to the community without pay, each student receives .5 units of credit toward the school's credit requirement for high school graduation. The community service component of the school's curriculum must be completed as a condition of graduation from the Bethlehem Area School District. The school district's complete high school graduation requirements are as follows:

| Required Courses | Classes of 1992 & 1993 Credit | Classes of 1994 & 1995 Credit | Grade When Usually Taken |
|---|---|---|---|
| Language Arts | 4.0 | 4.0 | 1.0 credit per year |
| World Cultures 9 | 1.0 | 1.0 | 9 |
| World Cultures 10 | 1.0 | 1.0 | 10 |
| U.S. History | 1.0 | 1.0 | 11 |
| Government | .5 | .5 | 12 |
| Economics | .5 | .5 | 12 |
| Mathematics | 3.0 | 4.0 | 1.0 credit per year |
| Science | 3.0 | 4.0 | 1.0 credit—Grade 9 |
| | | | 1.0 credit—Grade 10 |
| | | | 1.0 credit—Grade 11/12 |

| | Classes of 1992 & 1993 | Classes of 1994 & 1995 | |
|---|---|---|---|
| Required Courses | Credit | Credit | Grade When Usually Taken |
| Physical Education | .8 | .8 | .2 credit per year |
| Health 9 | .2 | .4 | 9 |
| Health 10 | .2 | .4 | 10 |
| Highway Education | .1 | .1 | 11 |
| Computer Technology | .5 | .5 | 9–12 |
| Community Service | n/a | .5 | 9–12 |
| Arts | 1.0 | 1.0 | 9–12 |
| General Elective | 5.0 | 6.0 | 9–12 |
| | 21.8 | 24.7 | |

Minor plaintiff Lynn Ann Steirer is a student at Liberty High School in the Bethlehem Area School District and is subject to the provisions and requirements of the community service program. During the course of the year, she spends approximately fifty (50) hours teaching crafts to children pursuant to her participation in the Girl Scouts Heritage Patrol. In addition, Lynn Ann Steirer engages in other volunteer activities, including helping with Sunday School class, assisting her mother with certain Girl Scout activities, and assisting in certain basketball and volleyball activities at the local junior high school. Lynn Ann Steirer performed these activities before the school district adopted the community service program. She objects to the community service program because she doesn't believe that the school district has a right to force her to participate.

Minor plaintiff David Moralis is also a student at Liberty High School subject to the community service program requirements. He also has participated in certain volunteer activities and anticipates that he will engage in more volunteer work in the future. David Moralis objects to the community service program because he doesn't believe that the school district has a right to force him to participate.

## II. DISCUSSION.

### A. *Standard For Summary Judgment.*

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment shall be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). An examination of the record reveals that no genuine issue of material fact exists and this case is ripe for resolution.[2] As discussed below, defendants have demonstrated as a matter of law that the community service program and graduation requirement does not violate the First, Thirteenth and Fourteenth Amendments to the United States Constitution. Under Rule 56(c), this Court must accordingly grant defendants' motion for summary judgment. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–323, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986).

### B. *Plaintiffs' Thirteenth Amendment Claim.*

■ Plaintiffs claim that the Bethlehem Area School District's community service program violates the Thirteenth Amendment's prohibition against involuntary servitude. Plaintiffs' claim is novel. The issue of whether mandatory community service constitutes involuntary servitude under the Thirteenth Amendment has not been addressed by any decision that the

**2.** The parties agree that there is no genuine issue of material fact. *See* Plaintiffs' Motion For Summary Judgment at 2–3; Defendants' Motion For Summary Judgment at 1.

parties or Court have discovered.[3] Examination of the language, purpose and interpretation of the Thirteenth Amendment, however, makes clear that no Thirteenth Amendment violation has occurred in the instant matter.

The obvious starting point in examining plaintiffs' Thirteenth Amendment claim is the language of the amendment itself. The Thirteenth Amendment states:

*Section 1.* Neither slavery nor involuntary servitude, except as punishment for crime whereof the party shall have been duly convicted, shall exist within the United States, or any place subject to their jurisdiction.

*Section 2.* Congress shall have the power to enforce this article by appropriate legislation.

U.S. Const.Amendment XIII.

As the Supreme Court in *United States v. Kozminski,* 487 U.S. 931, 108 S.Ct. 2751, 101 L.Ed.2d 788 (1988) (reversing conviction pursuant to 18 U.S.C. §§ 241, 1584 because district court's jury instructions regarding involuntary servitude contemplated means of coercion other than actual or threatened physical or legal coercion), recognized: "[w]hile the general spirit of the phrase 'involuntary servitude, is easily comprehended, the exact range of conditions it prohibits is harder to define." *Id.* at 942, 108 S.Ct. at 2759. Accordingly, the Court turns to the purpose and interpretation of the Thirteenth Amendment in examining the reaches and limits of the amendment's prohibition against involuntary servitude.

As the Supreme Court acknowledged in *Kozminski,* the Thirteenth Amendment was adopted with the "general intent to prohibit conditions 'akin to African slavery ...'" *Id., quoting Butler v. Perry,* 240 U.S. 328, 332–333, 36 S.Ct. 258, 259, 60 L.Ed. 672 (1916). Further, as *Bailey v. Alabama,* 219 U.S. 219, 31 S.Ct. 145, 55 L.Ed. 191 (1911) teaches:

[t]he language of the 13th Amendment was not new. It reproduced the historic words of the ordinance of 1787 for the government of the Northwest territory and gave them unrestricted application within the United States and all places subject to their jurisdiction. While the immediate concern was with African slavery, the Amendment was not limited to that. It was a charter of universal civil freedom for all persons, of whatever race, color, or estate, under the flag. The words involuntary servitude have a "larger meaning than slavery. It was very well understood that, in the form of apprenticeship for long terms, as it had been practiced in the West India Islands, on the abolition of slavery by the English government, or by reducing the slaves to the condition of serfs attached to the plantation, the purpose of the article might have been evaded, if only the word 'slavery' had been used." *Slaughter House Cases* [83 U.S. (], 16 Wall.[) ] 36, 69, 21 L.Ed. 394, 406 (1873). The plain intention was to abolish slavery of whatever name and form and all its badges and incidents; to render impossible any state of bondage; to make labor free, by prohibiting that control by which the personal service of one man is disposed of or coerced for another's benefit, which is the essence of involuntary servitude.

*Id.* 219 U.S. at 240–41, 31 S.Ct. at 151.

In applying the Thirteenth Amendment's prohibitions in a contemporary context, the Court agrees that:

one must consider the realities of modern life. As recent Federal Circuit Court cases point out, the contours of slavery have shifted since the enactment of the Thirteenth Amendment. *United States v. Warren,* 772 F.2d 827 (11th Cir.1985), *cert. denied,* 475 U.S. 1022 [106 S.Ct. 1214, 89 L.Ed.2d 326] (1986); *United States v. Mussry,* 726 F.2d 1448 (9th Cir.1984), *cert. denied,* 469 U.S. 855 [105 S.Ct. 180, 83 L.Ed.2d 114] (1984); *United States v. Booker,* 655 F.2d 562 (4th Cir. 1981). No longer is the slave always black and the master white. And, while subtler forms of coercion have replaced the blatant methods of subjugation practiced in the ante-bellum South, these new practices are no less effective than their older counterparts.

---

**3.** The Court notes that other school districts in the United States have adopted similar community service programs. *See* Defendants' Memorandum In Support of Summary Judgment at 4–6.

*United States v. Lewis,* 644 F.Supp. 1391, 1401 (W.D.Mich.1986) (holding that members of religious sect knowingly and willfully held one boy to involuntary servitude).

As defendants correctly note, however, "[f]orced labor in some special circumstances may be consistent with the general basic system of free labor." *Pollock v. Williams,* 322 U.S. 4, 17, 64 S.Ct. 792, 799, 88 L.Ed. 1095 (1944) (referencing instances where forced labor as a means to punish crime and to build highways was held to be permissible under the Thirteenth Amendment). Further, this Court is mindful of the Supreme Court's direction that "the education of the Nation's youth is primarily the responsibility of parents, teachers, and state and local school officials, and *not of federal judges.*" *Hazelwood School District v. Kuhlmeier,* 484 U.S. 260, 273, 108 S.Ct. 562, 571, 98 L.Ed.2d 592 (1988) (emphasis added) (citations omitted). In consideration of the foregoing, I now turn to the question of whether the school district's community service program violates the Thirteenth Amendment.

Plaintiffs argue that a review of cases interpreting the Thirteenth Amendment reveals that there are two elements which are necessary for a court to conclude that involuntary servitude has occurred: "(1) one person providing work or services to another; (2) under some type of compulsion or coercion." *See* Plaintiffs' Memorandum In Support of Summary Judgment at 5–7, *citing United States v. Kozminski,* 487 U.S. 931, 108 S.Ct. 2751, 101 L.Ed.2d 788 (1988); *Clyatt v. United States,* 197 U.S. 207, 25 S.Ct. 429, 49 L.Ed. 726 (1905); *Slaughter House Cases,* 83 U.S. (16 Wall.) 36, 21 L.Ed. 394 (1873); *Bailey v. Alabama,* 219 U.S. 219, 31 S.Ct. 145, 55 L.Ed. 191; *Pollock v. Williams,* 322 U.S. 4, 64 S.Ct. 792, 88 L.Ed. 1095 (1944); *United*

*States v. Mussry,* 726 F.2d 1448 (9th Cir. 1984), *cert. denied* 469 U.S. 855, 105 S.Ct. 180, 83 L.Ed.2d 114 (1984); *United States v. Booker,* 655 F.2d 562 (4th Cir.1981); *United States v. Warren,* 772 F.2d 827 (11th Cir.1985), *cert. denied* 475 U.S. 1022, 106 S.Ct. 1214, 89 L.Ed.2d 326 (1986). Plaintiffs contend that it is obvious that the community service program requires the provision of work or services for another. Further, plaintiffs argue that the community service program employs the compulsion or coercion necessary to fall within the ambit of Thirteenth Amendment proscription.[4]

Defendants respond with four principle arguments. First, defendants distinguish the cases relied upon by plaintiffs by arguing that the purpose of the community service program is not to benefit the recipient of service (i.e. the community), but rather to advance seventeen separate educational goals. Defendants argue that the essence of involuntary servitude is the personal service of one person for the benefit of another. *See Bailey v. Alabama,* 219 U.S. 219, 241, 31 S.Ct. 145, 151, 55 L.Ed. 191 (stating that the Thirteenth Amendment prohibits "that control by which the personal service of one man is disposed of or coerced *for another's benefit, which is the essence of involuntary servitude.*" (emphasis added)). Here, defendants contend that service performed by students is principally for the students' own benefit. Thus, under the *Bailey v. Alabama* definition, defendants contend that the required community service cannot rise to involuntary servitude under the Thirteenth Amendment. Second, defendants contend that plaintiffs rely upon cases where work is compelled by the actual or threatened use of physical or legal coercion. In contrast, defendants correctly note that students refusing to perform community service are not subject to physical force or

---

**4.** For the reasons stated below, the Court need not directly address the merits of plaintiffs' arguments. Further, the Court notes that the parties strongly contest the import and applicability of *United States v. Kozminski,* 487 U.S. 931, 108 S.Ct. 2751, 101 L.Ed.2d 788 (1988) to civil claims

of involuntary servitude. As the reaches of *Kozminski* do not impact the Court's conclusion in the instant matter, the Court need not address whether the definition of involuntary servitude used in *Kozminski* applies to civil as well as criminal cases.

legal sanction.[5] Third, defendants argue that the cases relied upon by plaintiffs are wholly distinguishable from the instant matter because students possess alternative choices to public school graduation. Defendants correctly contend that in the Thirteenth Amendment violation cases relied upon by plaintiffs, the challenged actions have been accompanied by a complete lack of choice in whether to engage in the challenged work or service. Here, defendants argue that the minor plaintiffs can (1) attend a private school; (2) withdraw from school and pursue education at home; or (3) remain in school and obtain a high school equivalency diploma. Fourth, defendants contend that the community service required is distinguishable by its nature from work found violative of the Thirteenth Amendment. In essence, defendants argue that there is a qualitative difference between tutoring a child or marching in the school band and engaging in migrant farm work. *See United States v. Booker,* 655 F.2d 562 (4th Cir.1981).[6]

In addressing plaintiffs' Thirteenth Amendment claim, *Bobilin v. Board of Education, State of Hawaii,* 403 F.Supp. 1095 (D.Hawaii 1975) provides helpful instruction. In *Bobilin,* plaintiff students challenged the validity of regulations promulgated by the Hawaii State Board of Education which required children of school age to perform cafeteria duty throughout the State of Hawaii. In a carefully considered opinion, the *Bobilin* court held that plaintiffs' complaint failed to present a substantial federal question under the Thirteenth Amendment and refused to convene a three-judge court pursuant to 28 U.S.C. § 2281.

In reaching this conclusion, *Bobilin* reviewed the cases where courts have concluded that activity violates the Thirteenth Amendment's prohibition against involuntary servitude and those cases where the courts have allowed servitude despite the dictates of the Thirteenth Amendment. *Bobilin* at 1099–1103, *citing Jobson v. Henne,* 355 F.2d 129 (2d Cir.1966) (holding that patients in a mental institution, who alleged that they were required to perform housekeeping duties at the institution for eight hours per night, six nights per week, in addition to working day jobs, stated claim under Thirteenth Amendment and 42 U.S.C. § 1983); *Weidenfeller v. Kidulis,* 380 F.Supp. 445 (E.D.Wis.1974) (holding that requiring mental patients to perform non-therapeutic work could rise to involuntary servitude under Thirteenth Amendment and accordingly denying defendants' motion to dismiss); *Downs v. Department of Public Welfare,* 368 F.Supp. 454 (E.D.Pa.1973) (holding that individual jurisdiction existed over state authorities where complaint alleged forced labor of mental patients); *Hodges v. United States,* 203 U.S. 1, 27 S.Ct. 6, 51 L.Ed. 65 (1906) (holding that district court did not possess jurisdiction over defendants' claim seeking to overturn indictment because "it was not the intent of the [Thirteenth] Amendment to denounce every act done to an individual which was wrong if done to a free man,

---

5. The Court recognizes that students refusing to participate in the community service program are subject to the sanction of not graduating from the school district.

6. The Court notes that defendants present several persuasive arguments. Defendants' reliance on the definition of involuntary servitude in *Bailey v. Alabama, see* Defendants' Memorandum In Opposition To Plaintiffs' Motion For Summary Judgment at 3, provides ground to distinguish the instant case from those decisions concluding that the Thirteenth Amendment has been violated. Further, defendants make a compelling argument that plaintiffs' implicit ability to choose whether to participate in the community service program, removes the program from the Thirteenth Amendment's reaches. *See* Defendants' Memorandum In Support of Summary Judgment at 25–29, *citing International Union v. Wisconsin Employment Relations Board,* 336 U.S. 245, 69 S.Ct. 516, 93 L.Ed. 651

(1949) (holding that issuance of injunction by state labor relations authority that orders state employees back to work does not violate Thirteenth Amendment because employees had the right to quit employment); *Cummings v. Virginia School of Cosmetology,* 466 F.Supp. 780 (E.D.Va.1979) (holding that school's use of students as hairdressers for customers did not violate Thirteenth Amendment in light of students' voluntary choice to enroll in the school); *Sellers v. Phillip's Barber Shop,* 46 N.J. 340, 217 A.2d 121 (1966) (court order directing barber to cut hair of blacks did not violate Thirteenth Amendment because barber possessed choice of deciding to no longer practice as a barber) (citations omitted). Because the Court concludes on other grounds that the community service requirement does not violate the Thirteenth Amendment, the Court need not address each reason why plaintiffs' Thirteenth Amendment claim fails.

and yet justified in a condition of slavery ...." *Id.* at 19, 27 S.Ct. at 9); *Beltran v. Cohen,* 303 F.Supp. 889 (N.D.Cal.1969) (holding that law authorizing summary levy on wages to collect unpaid federal income taxes was not involuntary servitude); *Pollock v. Williams,* 322 U.S. 4, 64 S.Ct. 792, 88 L.Ed. 1095 (1944) (declaring null and void Florida statute making it a misdemeanor to induce monetary advances with intent to defraud by a promise to perform labor); *Clyatt v. United States,* 197 U.S. 207, 25 S.Ct. 429, 49 L.Ed. 726 (1905) (reversing judgment and remanding for new trial where evidence of prior peonage was excluded in case against employer for returning individuals to a condition of peonage); *Butler v. Perry,* 240 U.S. 328, 36 S.Ct. 258, 60 L.Ed. 672 (1916) (upholding law that required able-bodied men between the ages of twenty-one and forty-five to work on roads and bridges of the state for no less than sixty hours annually when summoned to do so and rejecting Thirteenth Amendment challenge); *Selective Draft Law Cases,* 245 U.S. 366, 38 S.Ct. 159, 62 L.Ed. 349 (1918) (upholding compulsory military service); *Jacobson v. Massachusetts,* 197 U.S. 11, 25 S.Ct. 358, 49 L.Ed. 643 (1905) (upholding compulsory military service); *Heflin v. Sanford,* 142 F.2d 798 (5th Cir.1944) (denying petition for writ of habeas corpus because conviction for failure to report to designated military training camp was constitutional under Thirteenth Amendment). *Bobilin* states and this Court agrees:

> [a]t a minimum, the cases cited above indicate that there are certain servitudes which because of their historical circumstance are excepted from the prohibitions of the Thirteenth Amendment or because

of the public need involved are considered to be justified "special circumstances" in the public interest.

*Id.* at 1103.

Further, *Bobilin* persuasively states:

> [d]efendants here argue that cafeteria duty falls within a historical exception— that of education. Plaintiffs allege, however, that no educational value is involved.[7]

> Taking plaintiffs' allegation as true, although it is disputed in defendants' answer, this Court nevertheless, is unable to find that cafeteria duty falls within the constraints of the Thirteenth Amendment. Assuming, as both plaintiffs and defendants do, that the cafeteria duty allows the State to reap a financial benefit, that is, the obviation of any necessity to hire, at great expense, professional employees to perform the school-related housekeeping duties in the stead of students, it is clear that both parties must agree that the public, and not private interest and benefit are being served.

> *On the basis of the balances that the Supreme Court has struck in the past [8]—its weighing the duties and impositions mandated by law against the public need served—it is manifest to this Court that the cafeteria duty here imposed by State regulations do not fall within the proscription of the Thirteenth Amendment.*

*Id.* at 1103–04 (emphasis added)

The Court concludes that the reasoning of *Bobilin* is persuasive. Under the reasoning of *Bobilin,* it is apparent that the community service requirement does not violate the Thirteenth Amendment. Further, in the instant case, there is no dispute that the community service program serves educational purposes.[9] Finally, the Court

---

**7.** In *Bobilin,* plaintiffs implicitly conceded "that characterizing cafeteria duties as 'education' would undercut their assertion of involuntary servitude in violation of the Thirteenth Amendment of the United States Constitution." *Id.* at 1098. Here, the Court notes that there is no issue regarding the fact that the principle purpose of the community service program is educational.

**8.** The parties do not rely upon and the Court has not discovered any decision which would change *Bobilin*'s conclusion regarding the bal-

ances the Supreme Court has adopted in reviewing Thirteenth Amendment claims.

**9.** The Court notes that the distinctions drawn between therapeutic and non-therapeutic work in *Jobson v. Henne,* 355 F.2d 129, 132 (2d Cir. 1966), support the conclusion that no Thirteenth Amendment violation is caused by the community service program adopted by the Bethlehem Area School District. The obvious corollary in the public school setting to the therapeutic:non-therapeutic work distinction drawn in *Jobson,* is the distinction between educational and non-educational programs. Here, as opposed to *Bo-*

agrees that the appropriate remedy for plaintiffs' complaint lies with a legislative rather than judicial body. *Id.* at 1105.[10] Accordingly, plaintiffs' Thirteenth Amendment claim will be rejected.

## C. *Plaintiffs' First Amendment Claim.*

■ Plaintiffs also claim that the community service program violates the First Amendment rights of the school district's students. This argument lacks merit. The essence of plaintiffs' First Amendment claim is that the community service program compels the minor plaintiffs to declare through their actions that altruism is a desirable life philosophy. *See* Plaintiffs' Memorandum In Support of Summary Judgment at 20–21. The Supreme Court, however, has made clear that the activity required by the community service program does not fall within the protections of the First Amendment to the United States Constitution.

As *United States v. O'Brien,* 391 U.S. 367, 88 S.Ct. 1673, 20 L.Ed.2d 672 (1967) teaches: "[w]e cannot accept the view that an apparently limitless variety of conduct can be labeled 'speech' whenever the person engaging in the conduct intends thereby to express an idea." *Id.* at 376, 88 S.Ct. at 1678. Further, conduct must be "sufficiently imbued with elements of communication to fall within the scope of the First and Fourteenth Amendments." *Spence v. Washington,* 418 U.S. 405, 409, 94 S.Ct. 2727, 2730, 41 L.Ed.2d 842 (1974). As the Supreme Court more recently stated:

> [i]t is possible to find some kernel of expression in almost every activity a person undertakes—for example, walking down the street, or meeting one's friends at a shopping mall—but such a kernel is not sufficient to bring the activity with the protection of the First Amendment.

We think the activity of these dance-hall patrons—coming together to engage in recreational dancing—is not protected by the First Amendment. Thus this activity qualifies neither as a form of "intimate association" nor as a form of "expressive association" as those terms were described in *Roberts v. United States Jaycees,* 468 U.S. 609 [104 S.Ct. 3244, 82 L.Ed.2d 462] (1984).

*City of Dallas v. Stanglin,* 490 U.S. 19, 25, 109 S.Ct. 1591, 1595, 104 L.Ed.2d 18 (1989) (holding that ordinance restricting admission to certain dance halls to individuals between fourteen and eighteen years of age did not violate the First and Fourteenth Amendment).

In the instant matter, plaintiffs' claim represents an attempt to place the kernel of expression implicit in all activity within the protections of the First Amendment. *City of Dallas v. Stanglin* expressly rejects this kind of First Amendment claim. Therefore, it is apparent that plaintiffs' First Amendment argument must be rejected.

In support of their First Amendment claim, plaintiffs rely on *Tinker v. Des Moines Independent Community School District,* 393 U.S. 503, 89 S.Ct. 733, 21 L.Ed.2d 731 (1969), *West Virginia State Board of Education v. Barnette,* 319 U.S. 624, 63 S.Ct. 1178, 87 L.Ed. 1628 (1943), and *Lipp v. Morris,* 579 F.2d 834 (3d Cir. 1978). This reliance is flawed. *Tinker* involved the expressive conduct of wearing an arm band, while *Barnette* addressed a school's ability to compel an individual to salute the flag and *Lipp v. Morris* reached the issue of whether standing during the pledge of allegiance constituted expressive conduct protected by the First Amendment. Here, the community service required by the school district is non-expressive.

---

*bilin,* there is no issue that the community service program serves educational purposes. Thus, the analysis of *Jobson* further supports the conclusion that no Thirteenth Amendment violation has occurred in the Bethlehem Area School District.

**10.** In *Bobilin,* the District of Hawaii instructed plaintiffs that their objection to mandatory cafeteria duty should be directed at the state legisla-

ture. Here, plaintiffs are free to resort to local or state legislative bodies in pursuing a change in the community service program. *See Hazelwood School District v. Kulheimer,* 484 U.S. 260, 273, 108 S.Ct. 562, 571, 98 L.Ed.2d 592 (1988); *Board of Education of Hendrick Hudson Central School District v. Rowley,* 458 U.S. 176, 208, 102 S.Ct. 3034, 3051, 73 L.Ed.2d 690 (1982).

As the Court noted in *Texas v. Johnson,* 491 U.S. 397, 109 S.Ct. 2533, 105 L.Ed.2d 342 (1989):

> [i]n deciding whether particular conduct possesses sufficient communicative elements to bring the First Amendment into play, we have asked whether "[a]n intent to convey a particularized message was present, and [whether] the likelihood was great that the message would be understood by those who viewed it."

*Id.* at 404, 109 S.Ct. at 2539, *quoting Spence v. Washington,* 418 U.S. 405, 410–11, 94 S.Ct. 2727, 2730, 41 L.Ed.2d 842 (1974).

In this case, there is no intent to convey a particularized message supporting altruism and there is no likelihood that those witnessing the community service will understand the service's purpose to be promoting values of altruism. Simply put, the community service is like any other educational activity sponsored by the school district. The community service program occupies the same position within the school district's curriculum as physical education, science, history, highway education, and other classes.[11]

Under the Supreme Court's teaching in *Texas v. Johnson,* 491 U.S. 397, 109 S.Ct. 2533, 105 L.Ed.2d 342 (1989), *City of Dallas v. Stanglin,* 490 U.S. 19, 109 S.Ct. 1591, 1595, 104 L.Ed.2d 18 (1989), *Spence v. Washington,* 418 U.S. 405, 409, 94 S.Ct. 2727, 2729, 41 L.Ed.2d 842 (1974), and *United States v. O'Brien,* 391 U.S. 367, 88 S.Ct. 1673, 20 L.Ed.2d 672 (1967), it is apparent that plaintiffs' First Amendment claim lacks merit. Therefore, plaintiffs' claims under the First and Fourteenth Amendment will be rejected.

## III. CONCLUSION

For the reasons stated above, I shall grant defendants' motion for summary judgment and deny plaintiffs' motion for summary judgment.

---

11. The Court notes that if it accepted plaintiffs' First Amendment argument, school districts would be unable to require any educational activity without surviving First Amendment scrutiny by the Courts. For example, under the logic of plaintiffs' argument, a student's objection to attending a mandatory school trip to a museum of natural sciences would be clothed in the protections of the First Amendment because attending the trip would *a fortiori* represent an expression of belief that the study of natural sciences is a worthwhile endeavor. It is obvious that this reading of the First Amendment must be flatly rejected. *Not only would* plaintiffs' interpretation of the First Amendment expand the reaches of the amendment's protection to embrace virtually all activities, the interpretation would also wholly frustrate the Supreme Court's direction that education is the responsibility of teachers, parents, and state and local government, rather than that of the federal courts. *See Hazelwood School District v. Kuhlmeier,* 484 U.S. 260, 273, 108 S.Ct. 562, 571, 98 L.Ed.2d 592 (1988).