In re COURT FACILITIES FOR the ROUTT COUNTY Combined Court and Concerning the BOARD OF COUNTY COMMISSIONERS OF the COUNTY OF ROUTT.

No. 03CA0275.

Colorado Court of Appeals, Div. III.

May 20, 2004.

Rehearing Denied Sept. 23, 2004.

Certiorari Denied Feb. 14, 2005.*

---

* Chief Justice MULLARKEY and Justice KOUR-     LIS do not participate.

Ken Salazar, Attorney General, Maurice G. Knaizer, Assistant Attorney General, Dianne E. Eret, Assistant Attorney General, Denver, CO, for Routt County Combined Court.

John D. Merrill, County Attorney, Jonathan M. Krauss, Assistant County Attorney, Steamboat Springs, CO, for Board of County Commissioners of the County of Routt.

Opinion by Judge KAPELKE.

Respondent, the Board of County Commissioners of the County of Routt (the Board), appeals from the district court's order directing it to provide new facilities for the Routt County Combined Court. We vacate the order.

On December 16, 2002, the then chief judge of the district court issued an order directing the Board to appear before the court on December 23, 2002, to show cause why it should not be required to comply with the terms of an unsigned order attached to the show cause order. Also attached to the show cause order were numerous items of correspondence and other documentation regarding security, space, and other problems with the existing courthouse and regarding previous efforts by the court and the Board to have new court facilities built. Among the attached documents was an "Interim Report to the Board of Commissioners from the Court Facilities Review Committee," dated January 26, 1994.

Under the terms of the court's unsigned order, the Board would be required to submit a detailed plan regarding compliance with the order by January 1, 2004, and to have the new court facility completed by January 1, 2006.

The Board filed a response to the show cause order on December 20, 2002. In its response, the Board agreed that a new court facility is needed and acknowledged that "Colorado law requires the County to provide and maintain a 'suitable courthouse' or 'adequate courtrooms.'" The Board challenged the procedure adopted by the court in issuing the show cause order, however, and also objected to the deadlines that would have been established under the unsigned order.

The court held a hearing on the show cause order on December 23, 2002. The chief judge presided at the hearing. The Board presented testimony by one of the county commissioners and an architect. Again, while the Board conceded that new court facilities were needed, it questioned the procedure adopted by the court and objected to the proposed scheduling deadlines.

In both the unsigned order and the final order, entered after the hearing, the court set forth an extensive factual background regarding the history of the Routt County Courthouse and the need for a new facility. Specifically, the court addressed the need for greater space, new configuration patterns to allow for better circulation within the courthouse hallways, improved security, and improved accessibility for the disabled.

According to the historical account provided in the order, the court notified county officials in 1987 of deficiencies in the court facilities. Beginning in 1993, the Board established a facility review committee and hired consulting and architectural firms both to assess the need for a new facility and to submit proposed designs for the new courthouse. In a January 1994 report, the facilities review committee stated:

Specifically, the existing facility's design:

1. Does not allow for adequate courtroom security. It does not provide even the minimum security according to the Colorado Courthouse Security Guidelines.

2. Interferes with proper functioning of the legal process.

3. Does not provide adequate space for courtrooms, clerk's office, waiting area, storage, etc.

4. Does not provide adequate access for people with disabilities.

Despite the county's efforts over the years to gain public support for the building of a new courthouse, in November 2002, the voters defeated a proposal for a mill levy increase and bond issue to fund construction of a new facility.

In its final order entered following the hearing, the court directed the Board to take the following actions:

1. Routt County shall provide the Routt County Combined Court with a safe and adequate facility, in conformity with the Colorado Judicial Branch's Revised Space Standards for Court and Probation Facilities, and subject to approval by the Chief Judge of the Fourteenth Judicial District and the Chief Justice of the Colorado Supreme Court, as permitted by law.

2. Said space shall include a minimum of:

A. Three courtrooms and associated spaces (judges' chambers, jury deliberation rooms, witness waiting/attorney client conference rooms).

B. Three separate circulation patterns (public, private and secure).

C. Appropriate secure holding space for those in the custody of the Sheriff.

D. Appropriate space for other related functions, including the Clerk's Office, District Administrator, Water Referee, Family Court Facilitator, mediation rooms, and a child waiting area.

3. Routt County shall provide the Court with a detailed financial plan and a conceptual building plan regarding compliance with this Order no later than January 1, 2004. Said facility shall be completed and made available to the Routt Combined Court by no later than September 1, 2006. Routt County shall provide the Court with progress reports on a semi-annual basis; the first of these reports shall be submitted by July 1, 2003.

In this appeal, as in the trial court, the Board neither disputes the factual background described in the order nor contests

the court's need for new facilities. Further, the Board recognizes that the county is charged with the duty of providing a new courthouse. The Board does, however, challenge the authority of the district court to issue the order, the procedure employed by the court, and the terms of the order.

## I.

■ The Board contends that the court lacked the inherent power to issue, sua sponte, an order requiring it to provide new court facilities. We disagree.

■ The General Assembly has placed the duty of providing suitable court facilities in the hands of the county commissioners of each county. *Pena v. Dist. Court,* 681 P.2d 953, 959 (Colo.1984). Section 30–11–104(1)(a), C.R.S.2003, states: "Each county, at its own expense, shall provide a suitable courthouse...." Further, under § 13–3–108(1), C.R.S.2003, "the board of county commissioners in each county shall continue to have the responsibility of providing and maintaining adequate courtrooms and other court facilities...."

■ While the separation of powers doctrine generally proscribes judicial interference with the functions and authority of the legislative or executive branches, the same principle requires the judiciary to perform its own constitutional and statutory duties with absolute independence. *Pena v. Dist. Court, supra,* 681 P.2d at 956. Because the judiciary is a separate and independent branch of government, it is "abhorrent to the principles of our legal system and to our form of government that courts ... should be compelled to depend upon the vagaries of an extrinsic will." *Pena v. Dist. Court, supra,* 681 P.2d at 956 (quoting *Smith v. Miller,* 153 Colo. 35, 40–41, 384 P.2d 738, 741 (1963)).

To protect their independent status, courts necessarily possess certain inherent powers, which, as discussed, consist of "all powers reasonably required to enable a court to perform efficiently its judicial functions, to protect its dignity, independence, and integrity, and to make its lawful actions effective." *Pena v. Dist. Court, supra,* 681 P.2d at 956 (quoting Jim R. Carrigan, *Inherent Powers and Finance,* Trial, Nov.-Dec.1971, at 22); *see also Bd. of County Comm'rs v. Nine-*

*teenth Judicial Dist.,* 895 P.2d 545, 547–48 (Colo.1995).

■ Although the judiciary possesses inherent powers, courts must use caution in exercising such powers so as not to usurp or intrude upon the powers of the other two governmental branches. The court's inherent authority is "generally limited to matters that are reasonably necessary for the proper functioning of the judiciary." *Bd. of County Comm'rs v. Nineteenth Judicial Dist., supra,* 895 P.2d at 548. Specifically, a court may invoke inherent powers "only when established methods for procuring necessary funds have failed and the court has determined that the assistance necessary for the effective performance of judicial functions cannot be obtained by any other means." *Pena v. Dist. Court, supra,* 681 P.2d at 957.

Here, voters defeated the proposed mill levy increase and bond issue to fund a new court facility. Because the established method for obtaining the necessary funds had failed and the court had determined that the Board was not actively pursuing other means for providing a courthouse, the court properly invoked its inherent powers in ordering the Board to provide a new adequate facility. *See Pena v. Dist. Court, supra.*

## II.

■ The Board next contends that even if the court possessed the inherent power to order it to provide a new court facility, the court exceeded its authority in issuing the order here because the record does not demonstrate that the Chief Justice approved initiation of this proceeding. We agree.

Section 13–3–108(5), C.R.S.2003, provides that "construction or remodeling of any court or court-related facility shall be commenced only with prior approval of the chief justice of the Colorado supreme court after consultation with the board of county commissioners; except that a board of county commissioners, at its discretion, may take such actions."

In *Pena v. District Court, supra,* the supreme court stated that "[u]nder the provisions of the constitution, statutes, and directive of the chief justice ... the authority to *initiate proceedings* for the construction

... of adequate court facilities is vested in the chief judge of each judicial district *and* the Chief Justice of the Colorado Supreme Court who makes the final decision." *Pena v. Dist. Court, supra,* 681 P.2d at 960 (emphasis added).

As the court went on to explain, "[to] hold otherwise could subject officials in the legislative and executive branches of government to inconsistent orders entered by each county, district, and appellate judge in the State of Colorado." *Pena v. Dist. Court, supra,* 681 P.2d at 960.

The record here does not indicate that the Chief Justice approved the initiation of this proceeding to require the Board to construct a new court facility. *See Pena v. Dist. Court, supra,* 681 P.2d at 960. Although the district court stated in its final order that the Chief Justice had given her approval of an earlier floor plan for a proposed court facility, nothing in this record shows that the Chief Justice approved either the initiation of this proceeding or the construction of the facilities required by the order.

In this appeal, the district court attempts to distinguish *Pena,* contending that the ruling in that case was based on CJD 79–6 and asserting that the directive provided that "each Chief Judge must submit requests for capital outlay and equipment leases and rentals to the state court administrator," and that chief judges "could make recommendations but could not exercise discretion over budgetary matters."

The district court argues that CJD 79–6 has been superseded by CJD 95–01, which, it asserts, "delegates responsibility for the district's budget, facilities, and equipment to each of the chief judges." We are not persuaded.

Paragraph 12 of CJD 95–01 states that the "chief judge is responsible for preparing, allocating and controlling the budget within the district." There is no language in paragraph 12 that can reasonably be construed to delegate the Chief Justice's authority to approve the initiation of proceedings for the construction or remodeling of court facilities.

Nor can such a delegation of authority be read into paragraph 13 of CJD 95–01, which states that the "chief judge is responsible for *allocation of office space,* including, but not limited to, courtrooms, chambers, clerks' offices, probation offices, jury rooms, and storage areas" (emphasis added).

Accordingly, we conclude that in the absence of demonstrated approval by the Chief Justice, the district court's order cannot stand.

In light of our holding, we need not address the Board's additional contentions.

The order is vacated.

Judge CARPARELLI concurs.

Judge ROY specially concurs.

Judge ROY specially concurring.

I agree that under *Pena v. District Court,* 681 P.2d 953 (Colo.1984), the Chief Justice must concur in the exercise of inherent power. I write separately to express concern about the holding and rationale of *Pena.*

At the outset, *Pena* is premised on a phrase contained in § 13–3–108(5), C.R.S. 2003, which states that "construction or remodeling of any court or court-related facility shall be commenced only with prior approval of the chief justice of the Colorado supreme court after consultation with the board of county commissioners." That statute, in my view, is limited to the commencement of construction and remodeling projects and is appropriately silent as to the exercise of inherent power.

Second, by relying on § 13–3–108(5), the supreme court in *Pena* appears to accept the proposition that the General Assembly has the power, exercised through legislation, to limit inherent power. That proposition is antithetical to the purpose of inherent power.

The rationale of the supreme court in *Pena* was to protect the executive and legislative branches from inconsistent and conflicting orders. That goal can be accomplished by the chief justice reserving to himself or herself the power to approve or initiate the exercise of inherent power. Reserving that power to the chief justice would assure that any confrontation between the judicial and legislative or executive branches, with its inherent political risk and constitutional implications, would be carefully considered at the

highest levels of the judicial branch prior to initiation.