The **PEOPLE** of the State of Colorado, Plaintiff–Appellee,

v.

**Hassan McGLOTTEN, Hausua Aju Whittiker, James L. McNurlen, Darkhanbayar Tumentsereg, Richard Scott Carmichael, Clevia Maria Firethunder, and James Elwood Oplinger, Defendants,**

**and Concerning Valeri BARNES, Contemnor–Appellant.**

No. 04CA2636.

Colorado Court of Appeals, Div. IV.

Dec. 1, 2005.

Certiorari Denied May 15, 2006.*

---

* Justice EID does not participate.

Justice MARTINEZ and Justice BENDER would grant as to the following issue:

Whether a trial court order compelling petitioner, a former court reporter, to continue producing transcripts two years after her resignation as a state employee constitutes "involuntary servitude" in violation of the Thirteenth Amendment of the United States Constitution and Article II, Section 26 of the Colorado Constitution.

Carol Chambers, District Attorney, Paul R. Wolff, Deputy District Attorney, Centennial, Colorado, for Plaintiff–Appellee.

Killmer, Lane & Newman, LLP, Darold W. Killmer, David A. Lane, Denver, Colorado, for Contemnor–Appellant.

RUSSEL, J.

Valeri Barnes appeals the trial court's order holding her in contempt of court. We affirm.

Barnes worked as a court reporter for the Arapahoe County District Court. During her employment, she was assigned to record proceedings involving the following criminal defendants: (1) Hassan McGlotten, 00CR2666; (2) Hausua Aju Whittiker, 00CR2822; (3) James L. McNurlen, 01CR80; (4) Darkhanbayar Tumentsereg, 01CR220; (5) Richard Scott Carmichael, 01CR280; (6) Clevia Maria Firethunder, 01CR464; and (7) James Elwood Oplinger, 01CR552. Transcripts of these proceedings are necessary for appellate review.

In March 2002, Barnes left her job and went to work for the federal courts. Although Barnes agreed to complete the necessary state court transcripts, her efforts were interrupted: she was diagnosed with cancer, underwent surgery and chemotherapy, and did not work for several months. Barnes continues to suffer lingering effects of her illness and treatment.

In early 2003, Barnes returned her notes to the state district court so that other court reporters could complete the necessary transcripts. This proved unsuccessful: Barnes's notes are idiosyncratic, and the reporters could not complete the transcripts without her assistance.

In late 2003, several criminal defendants—including those named above—filed motions in this court, seeking to vacate their convictions. These defendants argued that the lack of transcripts was depriving them of their right to a timely appeal.

In February 2004, the district court ordered Barnes to dictate her notes into a tape recorder so that another court reporter could complete the transcripts. Barnes failed to do so. The court then hired a reporter who prepared draft transcripts and gave them to Barnes for corrections. Barnes assisted this reporter through August 2004 but then announced that she would no longer cooperate.

The People then filed a motion to hold Barnes in contempt of court.

In November 2004, the court heard evidence on the People's motion. The court found that Barnes had the duty and ability to assist in completing the transcripts. It found that Barnes had failed to comply with the court's orders and imposed a remedial contempt sanction: it ordered that Barnes be jailed until she assists in preparing the transcripts.

The court stayed the sanction pending this appeal.

### I.

■ Barnes first contends that the trial court lacked authority to order her to assist in preparing the transcripts because she no longer works for the state system. We disagree.

■ Courts have inherent authority to issue orders that are necessary for the performance of judicial functions. *Halaby, McCrea & Cross v. Hoffman,* 831 P.2d 902, 907 (Colo.1992); *Pena v. Dist. Court,* 681 P.2d 953, 956 (Colo.1984). This inherent authority extends beyond the power to control litigants, lawyers, and court personnel. The court may order other individuals to support or participate in judicial proceedings. *See, e.g., Eykelboom v. People,* 71 Colo. 318, 206 P. 388 (1922) (court has inherent power to issue a subpoena for records; that power is not limited to the parties); *Bd. of County Comm'rs v. Lee,* 3 Colo.App. 177, 180, 32 P. 841, 842 (1893) (court may order any citizen to "attend in obedience to process, and to testify as to what he may know"); *see also In re Court Facilities ex rel. Bd. of County Comm'rs,* 107 P.3d 981, 984 (Colo.App.2004) (court has inherent authority to order county commissioners to provide a new court facility).

■ As part of its inherent authority, the court has the power to enforce obedience

to its orders though contempt sanctions. *Kourlis v. Port,* 18 P.3d 770, 773 (Colo.App. 2000). The court's power to remedy contempt includes the ability to punish those who are not currently parties or officers of the court. *In re Lopez,* 109 P.3d 1021, 1023 (Colo.App.2004).

We conclude that Barnes did not escape the court's inherent authority when she left her job in the state court system. Barnes has effectively placed herself in the position of a witness whose services are essential to ensure fair judicial proceedings. Because Barnes is the only person who can read her notes, she alone can provide the "evidence" necessary to enable appellate review of the pertinent criminal cases. *Cf. In re Alt v. Cline,* 224 Wis.2d 72, 589 N.W.2d 21, 26–27 (1999) (unwilling expert can be required to testify if party demonstrates compelling necessity).

### II.

■ Barnes next contends that, if the contempt sanction stands, she will be subjected to involuntary servitude in violation of the Thirteenth Amendment of the United States Constitution and article II, § 26 of the Colorado Constitution. We disagree.

■ The Thirteenth Amendment provides: "Neither slavery nor involuntary servitude, except as a punishment for crime, whereof the party shall have been duly convicted, shall exist within the United States, or any place subject to their jurisdiction." U.S. Const. amend. XIII, § 1. Article II, § 26 of the Colorado Constitution provides: "There shall never be in this state either slavery or involuntary servitude, except as a punishment for crime, whereof the party shall have been duly convicted." ' The primary purpose of both provisions is to outlaw slavery. *United States v. Kozminski,* 487 U.S. 931, 942, 108 S.Ct. 2751, 2759, 101 L.Ed.2d 788 (1988); *In re Marriage of Franks,* 189 Colo. 499, 508, 542 P.2d 845, 851 (1975).

■ The "prohibition against involuntary servitude does not prevent the State or Federal Governments from compelling their citizens, by threat of criminal sanction, to perform certain civic duties." *United States v.*

*Kozminski, supra,* 487 U.S. at 943–44, 108 S.Ct. at 2760. Thus, for example, governments may compel military service or other public work without violating the Thirteenth Amendment. *See Selective Draft Law Cases,* 245 U.S. 366, 38 S.Ct. 159, 62 L.Ed. 349 (1918) (military service); *Butler v. Perry,* 240 U.S. 328, 36 S.Ct. 258, 60 L.Ed. 672 (1916) (work on public roads and bridges).

Judicial proceedings fall within the scope of civic interests that the public is required to support. In *Hurtado v. United States,* 410 U.S. 578, 93 S.Ct. 1157, 35 L.Ed.2d 508 (1973), the Court addressed a challenge to a statute that allowed the government to incarcerate material witnesses to secure their testimony. The witnesses complained that the statutory rate of pay—$20 for each day of attendance, plus $1 for each day of incarceration—violated their rights under the Fifth and Thirteenth Amendments. In rejecting these challenges, the Court noted that the "public obligation to provide evidence ... persists no matter how financially burdensome it may be." *Hurtado v. United States, supra,* 410 U.S. at 589 & n. 11, 93 S.Ct. at 1164. The witnesses' sacrifice, wrote the Court, "is a part of the necessary contribution of the individual to the welfare of the public." *Hurtado v. United States, supra,* 410 U.S. at 589, 93 S.Ct. at 1164 (quoting *Blair v. United States,* 250 U.S. 273, 281, 39 S.Ct. 468, 471, 63 L.Ed. 979 (1919)).

Here, Barnes's obligation to provide transcripts is a necessary contribution to the welfare of the public. Her service is required because she alone can read her notes and because courtroom transcripts are "indispensable to the administration of justice." *Jones v. Dist. Court,* 780 P.2d 526, 528 (Colo. 1989); *see also People v. Killpack,* 793 P.2d 642, 643 (Colo.App.1990) (if a criminal defendant is prejudiced by an incomplete appellate record, his conviction must be reversed).

Relying on *Family Division Trial Lawyers of Superior Court–D.C., Inc. v. Moultrie,* 725 F.2d 695 (D.C.Cir.1984), and *Steirer v. Bethlehem Area School District,* 789 F.Supp. 1337, 1343 (E.D.Pa.1992), *aff'd,* 987 F.2d 989 (3d Cir.1993), Barnes nevertheless argues that the court's order violates the Thirteenth Amendment because it contains

no escape clause or opt-out provision. We reject this argument.

■ In evaluating a claim under the Thirteenth Amendment, courts attach great significance to the fact that an individual may avoid the required service. But the ability to opt out is not an indispensable condition for compliance with the Thirteenth Amendment. It is simply one fact that courts must consider. *See, e.g., Steirer v. Bethlehem Area Sch. Dist., supra*, 789 F.Supp. at 1344–46 (permissible to require students to perform community service because it serves educational purposes and the interest of the public). Here, an opt-out provision is neither required nor possible because other court reporters cannot read Barnes's notes.

Although it is not essential to our analysis, we note that Barnes will be compensated at a reasonable rate for her services. And we note that, by assisting in the preparation of the transcripts, Barnes could limit the liability that she might otherwise face in a potential civil suit. *See Antoine v. Byers & Anderson, Inc.*, 508 U.S. 429, 113 S.Ct. 2167, 124 L.Ed.2d 391 (1993) (court reporter does not have absolute immunity from liability for delay in preparing transcript of a criminal trial); *State ex rel. Philyaw v. Williams*, 190 W.Va. 272, 438 S.E.2d 64, 67 (1993) (court reporters are potentially liable to those who are harmed by the failure to prepare transcripts promptly).

## III.

■ Finally, Barnes contends that the trial court abused its discretion in imposing remedial contempt sanctions against her. We disagree.

■ The exercise of contempt powers is discretionary, and sanctions will not be reversed unless the contemnor shows that the court abused its discretion. *In re Estate of Elliott*, 993 P.2d 474, 478 (Colo.2000); *In re Marriage of Roberts*, 757 P.2d 1108, 1110 (Colo.App.1988). A court must, however, exercise its contempt powers with caution and self-restraint. *In re Estate of Elliott, supra*, 993 P.2d at 478.

■ We perceive no serious question that court reporters may be held in contempt for failing to produce transcripts in a timely manner. This sanction has been employed in other jurisdictions. *See, e.g., United States v. Luciano–Mosquera*, 63 F.3d 1142, 1158 n. 8 (1st Cir.1995); *In re Peasley*, 189 Ill. App.3d 865, 137 Ill.Dec. 139, 545 N.E.2d 792 (1989); *In re Hatfield*, 607 N.E.2d 384 (Ind. 1993); *In re Conner*, 722 S.W.2d 888 (Ky. 1987); *In re Hanks*, 44 Or.App. 521, 606 P.2d 1151 (1980), *aff'd*, 290 Or. 451, 623 P.2d 623 (1981); *Johnson v. State*, 151 S.W.3d 193, 195–96 (Tex.Crim.App.2004).

■ The use of contempt sanctions may be particularly appropriate in criminal cases. If criminal defendants do not receive timely direct appeals, they may bring due process claims against the state. Such claims require courts to consider, among other things, the extent to which the state is at fault. *See Harris v. Champion*, 15 F.3d 1538, 1559–67 (10th Cir.1994). Because court reporters are considered officers of the court, their failures are attributable to the state. *Cameron v. LeFevre*, 887 F.Supp. 425, 432 (E.D.N.Y. 1995); *see also State v. Harper*, 675 A.2d 495, 498 (Me.1996); *In re Williams*, 378 Mass. 623, 393 N.E.2d 353, 355 (1979). Thus, a court may employ contempt sanctions against a court reporter in an effort to discharge the state's responsibility to provide due process. *See Cameron v. LeFevre, supra* (use of contempt sanction cited as evidence of reasonable diligence).

Barnes argues that the court's order was inappropriate because the evidence established that she was unable, and not merely unwilling, to assist in producing the transcripts. We conclude that the record supports the trial court's findings.

■ Before imposing remedial contempt sanctions, a trial court must find that the contemnor has the present ability to perform the acts required to purge the contempt. C.R.C.P. 107(d)(2); *In re Estate of Elliott, supra*, 993 P.2d at 479. The contemnor has the burden of proving the inability to perform the acts required. *In re Estate of Elliott, supra*. We accept the court's factual findings unless they are so clearly erroneous as to find no support in the record. *People*

*in Interest of S.G.,* 91 P.3d 443, 452 (Colo. App.2004).

Here, the trial court found that Barnes had the present ability to assist in the preparation of the transcripts. The record supports these findings, for it shows that Barnes (1) was able to assist in completing transcripts before refusing to cooperate further, and (2) is able to perform her full-time job in federal court.

Barnes produced evidence that, if credited, would have supported a finding that she lacks the ability to purge the contempt. This evidence included the testimony of a medical expert who opined that Barnes suffered cognitive dysfunction as a result of her chemotherapy. But the court discounted the credibility of this evidence because it was based on information supplied by Barnes and because the expert was surprised to learn that Barnes was employed full time. As the trier of fact, the court was free to reject this and other expert testimony, and we are bound by its findings. *See Tiger v. Anderson,* 976 P.2d 308, 310–11 (Colo.App.1998).

We therefore find no abuse of discretion.

The order is affirmed.

Judge LOEB and Judge METZGER ** concur.